9467

STATE v. FREELY.

(89 S. E. 643.)

1. CRIMINAL LAW—JURY—FAILURE TO AGREE—"RETURN" INTO COURT.—
   Within Code of Laws, sec. 2050, relative to proceedings when a jury
   after due and thorough deliberation return into Court without having
   agreed on a verdict, the jury does not strictly "return" when it comes
   only on being sent for by the Court.

2. CRIMINAL LAW—JURY—FAILURE TO AGREE—SENDING BACK—DISCRE-
   TION.—Under Code of Laws, sec. 4050, providing that if the jury
   return into Court a second time without having agreed on a verdict,
   they shall not be sent out again without their consent, if the circum-

stances satisfy the Judge, in a wise exercise of his discretion, that the jury consent to go 'out again, it is lawful to send them out; and the exercise of such discretion will not be disturbed unless obviously wrong.

3. CRIMINAL LAW — INSTRUCTIONS — DUTY OF JURY. — While the words "true verdict" in an instruction that it is as much a juror's duty to find a verdict as it is a true verdict, are ambiguous, the addition of the words, "if it can be done without the sacrifice of an honest conviction," make it plain what the Court meant to tell them, so that they could not have been misled.

4. WITNESSES — CONTRADICTION OF ANSWER ON CROSS-EXAMINATION. — Where to show bias a witness for the State was, on cross-examination, asked about a certain lewd relationship of himself with another and denied it, defendant could not show the truth thereof.

5. CRIMINAL LAW—EVIDENCE—SELF-SERVING DECLARATION.—Relative to disappearance of defendant, the morning after the homicide, from the home of F., for whom he had been working, not being flight, evidencing guilt, because of the mental state of lack of fear and sense of guilt, statement of defendant, 11 days afterwards, when applying to D. for work, that D. might ask F. what sort of a man he was, was not objectionable as a self-serving declaration; it not being probable the statement was made to manufacture evidence that he had no sense of guilt.

Before SMITH, J., Anderson, February, 1916.   Reversed.

Doc Freely, convicted of murder, appeals. The facts are stated in the opinion.

*Messrs. M. L. Bonham, Rufus Fant, Jr., and T. P. Dickson,* for appellant, cite: *As to conduct of trial, sending jury back a second time without their consent, to consider case:* Civil Code, sec. 4050; 75 S. C. 494; 45 S. C. 466.  *As to exclusion of testimony, as to defendant's declarations:* 3 Wigmore Ev. 2230; 93 Am. Dec. 274; 145 U. S. 710, 711. *Right to new trial, because jury disregarded charge:* 57 S. C. 347; 100 S. C. 287; 68 S. C. 523.

---

FOOTNOTE.—As to coercion of disagreeing jury, see notes in 16 L. R. A. 643, 11 A. & E. Ann. Cas. 1131, 25 A. & E. Ann. Cas. 1912d, 440, 38 A. & E. Ann Cas. 1915d, 668.

*Mr. Solicitor Smith,* for respondent, cites: *As to sending back jury:* Civil Code, sec. 4050; 45 S. C. 659; 75 S. C. 494; 54 S. C. 234; 97 S. C. 24. *Self-serving declarations:* 68 S. C. 424; 72 S. C. 75; 2 Wharton Cr. Ev., pp. 1425, 1426. *Contradiction on collateral matter:* 89 S. C. 152; 33 S. C. 582; 52 S. C. 530; 76 S. C. 105; 94 S. C. 458; 100 S. C. 248; 98 S. C. 114. *Defects in indictment waived:* Cr. Code, sec. 84.

July 15, 1916.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The defendant is a negro man; he was tried for the murder of a Confederate veteran named Dodd; the verdict was "guilty," and the judgment of the law was death. The homicide was committed with a blunt instrument on the head, on Saturday afternoon, some time between 4 and 6 o'clock, February 20, 1915, in the storeroom of the deceased on Hampton street, in the city of Anderson, a half mile from the courthouse. There was no eyewitness to the tragedy; all the testimony rests in circumstances. The defendant was gone from his accustomed neighborhood, two or three miles out, with Mr. Fowler, on the morning after the event, and was absent until his arrest. He was arrested near Calhoun Falls, in Abbeville county, on November 10, 1915; was tried February, 1916. The jury was charged and went to its room at 1:30 p. m., and returned a verdict the next day about 10 a. m.. Such is a rough sketch of the whole transaction.

There are six exceptions, but the appellant has argued only three questions of law. There was full and earnest argument on the issue of fact, whether the testimony proved beyond a reasonable doubt the guilt of the accused.

1. The first issue of law is whether the Court observed the direction laid down in section 4050 of the Code of Laws

hereinafter quoted. The jury first retired to make up a verdict at 1:05 p. m., Tuesday. At some hour the same evening or night, the exact hour does not appear, the following episode occurred:

"The jury returned to the court room. Court: Mr. Foreman, the Court was informed that you knocked on the door and announced that you had not agreed on a verdict, which makes it necessary for me to inquire whether your inability to agree is due to a question of law or one of fact. Foreman: Why, your Honor, it is a question of fact. Court: You do not need any further instruction on the law of the case? Foreman: I don't think so, sir. Court: Your difference being one of fact, why the Court is totally unable to assist you. You may retire to your room."

The Court did not then explain the law anew. No more was heard from the jury until Wednesday morning, when the Court was convened, and the following event happened:

"Next morning, when in pursuance of the instructions of the Court issued to the sheriff the jury was brought into the court room, this then occurred: "Mr. Foreman, is your difference one of fact or one 'of law?' Foreman: One of fact, your Honor. Court: Well, that being the case, under the Constitution of the State and under the rule of right, the Court is absolutely powerless to be of any assistance to you at all."

Nevertheless, the Court went on and charged the jury again, saying, *inter alia:* "It is as much a juror's duty to find a verdict as it is to find a true one, if it can be done without the sacrifice of an honest conviction."

True, the Judge warned them against the sacrifice of a conviction or honest belief. He sent them back with this admonition: "Go back, Mr. Foreman and gentlemen of the jury, and make one more sincere, honest effort, as the Court has suggested, for that is the only kind of effort you will put forth. You may retire."

The jury were not advised that they could not be sent back without their consent. They did not ask for instructions on the law.

In none of this was there any violation of the statute. The words of it are (except the numerals which we supply) :

"When a jury, after due and thorough deliberation upon any cause return into Court without having agreed upon a verdict, the Court may explain * * * to them anew the law applicable to the case, and may send them out for further deliberation; but if they return a second time without having agreed upon a verdict, they shall not be sent out again without their own consent, unless they shall ask from the Court some further explanation of the law."

The statute is plain. In the instant case, assuming, but not deciding, that the jury returned first after due and thorough deliberation upon the case, yet literally they did not return a second time at all; the Court sent for the jury. The word used by the statute is "return," which means "to come back after an interval, to appear again." Webster. It is true that when the Judge had the jury called from its room to the court room, the jury did literally return. But the spirit of the statute ought not to be sacrificed to verbalism. Without regard to a technical meaning of the word "return," the object of the statute was to prevent forced verdicts, and to prevent undue severity of jury service. In the first instance, a jury must give the case due and thorough deliberation before they come out of the room at all to announce an inability to agree, and of such deliberation, of course, the Court must wisely judge. After the first return of the jury under such circumstances, the Court had an undisputed right to send them out for further deliberation. At the second return the jury, without having agreed upon a verdict, they might have asked for further explanation of the law, in which event the Court might have again sent them out. That will not be questioned. And at the second return without having agreed upon a verdict, they

might be sent out again by their own consent. That will not be disputed.

So the question is, did it appear to the Judge, under all the circumstances there presented, that the jury consented to return the third time? Plainly if the jury had said: "We can't agree. It's no use to send us back; we desire to be discharged"—the duty would have been imperative upon the Judge to discharge them. If the same thing had been manifest from all the circumstances, the same imperative duty would have operated. If the circumstances satisfied the Judge, in a wise exercise of his discretion, that the jury consented to the return, then it was lawful to return them. The exercise of such a discretion at so delicate stage of a trial ought not to be disturbed unless it was obviously wrongly exercised.

The appellant refers to the Kelley case, in 45 S. C. 659, 24 S. E. 45, to sustain his contention. Facts make a case, and the facts of that case have no likeness to those of the case at bar. A Judge may not violate the statute; but, in applying the facts of the case to the words of the statute, large discreation must be left to the Judge. *State v. Stephenson,* 54 S. C. 234, 32 S. E. 305. We think that the discretion here was wisely used.

2. When the jury came out Wednesday morning, "the Court explained to them anew the law applicable to the case." In that explanation the Court said, as before quoted: "It is as much a juror's duty to find a verdict as it is to find a true one, if it can be done without the sacrifice of an honest conviction."

It is true the compound word "verdict" meant to start with a true saying; and it may be said that when the Judge told the jury it was its duty to find a verdict, that meant to find a true saying. Yet "verdict" has come to mean the answer of a jury given to a Court. Webster. There ought to be a difference betwixt a verdict and a true verdict. It may be that a verdict might, at the same time, express the

true judgment of the jury, and express an untrue relationship of the accused to the event tried. So that the words "true verdict" are ambiguous. But this is refining too much. Whatever the words meant, the addition of the other words, "if it can be done without the sacrifice of an honest conviction," made it plain what the Court meant to tell the jury. The learned counsel for appellant, with admirable frankness, says in his printed brief:

"He, with elaborate care, warned the jury not to sacrifice a principle, not to palter with the truth, and urgently urged them to be true to themselves."

We think the jury was not misled by the Court.

3. The testimony which the defendant offered to dispute a witness for the State, named McCoy, was clearly incompetent, as the Court ruled. McCoy had testified for the State as to alleged admissions of the defendant, months after the homicide. To show bias of the witness he was questioned by defendant's counsel about some alleged lewd relationship which he had with a colored woman. The witness denied the truth of the circumstance, and a witness for the defense was tendered to prove the truth of the circumstance. That was plainly not an issue to be tried in this case.

4. The last and serious issue made by the appeal relates to the exclusion by the Court of certain proffered testimony of a white man named Dodson, who was a witness for the defendant. The man, Dodson, was a farmer, and resided a mile and a half from Donalds, a railroad station in Abbeville county; and 4½ miles from Honea Path, a town in Anderson county on the Southern Railway. On the 3d of March, 1915, 11 days after the homicide, the defendant was at Dodson's residence, and expressed a desire to hire himself to Dodson, which he did, and where he labored 5 months. Dodson was prepared to swear that Doc, at the inception of the interview, said to him:

"If you know Mr. Fowler, in Anderson, phone him and ask him what sort of negro I am. I worked with him more than 13 years."

Upon argument the Court excluded the testimony, upon the ground, "In its last analysis it is a declaration in his own behalf." In our opinion the testimony was competent, and was vital to the defense. The flight of one charged with crime has always been held to be some evidence tending to prove guilt. Solomon wrote as a proverb the "wicked flee when no man pursueth;" and Shakespeare made guilty Hamlet to soliloquize that "conscience does make cowards of us all." The flight of the defendant was the initial circumstance which aroused the suspicion of Fowler, the defendant's employer; and that suspicion was communicated by Fowler to the law officers. It is obviously true that it was of the utmost importance for the defendant to prove that he did not flee; not that he did not go, for that is admitted, but that he did not then have the emotion of fear, that he was not quickened by a sense of guilt. That mental state of a lack of fear might have been proven by a dumb circumstance. If the defendant had returned to Fowler's Sunday night after the homicide on Saturday afternoon, that circumstance might be shown to rebut fear and the sense of guilt. If the defendant had, in the week or ten days after his departure, written Fowler a letter, stating his whereabouts, that would be competent testimony to rebut fear and the sense of guilt. The rule against declarations in one's favor was established, it is said, to prevent fabricated defenses. But if the declarant had no probable capacity to judge of the effect of his declaration to acquit him, then there is no reason why the declaration may not be proven if it throws light on the emotions of him who made it. It is not probable, and hardly possible, that when Freely told Dodson to inquire of Fowler for his good character, he was then making testimony to prove that he had no sense of guilt. If Freely was willing, on the 3d of March, for Fowler

to know where he was, that state of mind can be proved by Freely's declaration of it under all the circumstances, and it could hardly have been proven otherwise. The subject is ably discussed by Wigmore, page 2203, c. 56. We are of the opinion that the testimony ought to have been heard, and that its exclusion was hurtful to the defendant.

The defendant has only one life here. The jury hesitated long about the verdict. A life ought not to be taken unless the necesssity for it be imperious. The defendant does not go acquit; he must face only another jury.

The judgment below is reversed, and a new trial is ordered.