17827

Waites T. EDWARDS, Respondent, v. William M. EDWARDS, Robert W. Edwards, Joseph V. Edwards, Elizabeth Edwards Dempsey and Dorothy Edwards Cunningham, Appellants

(121 S. E. (2d) 432)

*Messrs. Love, Thornton & Arnold* and *J. G. Leather-wood,* of Greenville, *for Appellants,*

*Messrs. Thomas A. Wofford* and *Theodore A. Snyder, Jr.,* of Greenville, *for Respondent,*

August 24, 1961.

TAYLOR, Chief Justice.

Plaintiff brought this action seeking to have himself declared the natural child of William S. Edwards and therefore an heir of James M. Edwards.

William S. Edwards married Mamie Taylor in August, 1915. At that time she was the mother of a four-year-old son born out of wedlock, named Waites and plaintiff here. Following the marriage, six children were born to William S. and Mamie Taylor Edwards. Those children, with the exception of Roger, who died many years ago, are the de-

fendants in this case. Both William S. Edwards and Mamie Taylor Edwards were reared and lived all of their lives in the Taylors Community in the eastern part of Greenville County. William S. Edwards died testate in 1953 and Mamie Taylor Edwards died in 1945.

A brother of William S. Edwards, James M. Edwards, died intestate on April 9, 1958. He had been *non compos mentis* most or all of his life, had never married, and left as his heirs his nephews and nieces. His net personal estate amounted to $161,388.91. One-third of this was distributable *per stirpes* to those nephews and nieces who were children of William S. Edwards.

Distribution was made to the defendants, one-fifteenth each, on February 11, 1959. Subsequently, on March 24, 1959, plaintiff made demand on the defendants for a distributive share of one-eighteenth or one-sixth of the one-third distributed to the William S. Edwards children.

The defendants answered in due time, denying that their father was also the father of plaintiff.

Upon trial the Court reserved all issues of law and submitted to the jury the question: "Was William S. Edwards the father of Waites T. Edwards?" The jurors commenced deliberation shortly before noon on June 24, 1960. At 3:00 P. M. they requested further instruction as to the burden of proof. At 6:30 P. M. they reported that they were unable to agree on a verdict, and the Court instructed them to deliberate further. At 12:45 A. M. on June 25, they again reported that they were unable to agree. After further instructions, they returned to the jury room for deliberation and at 1:05 A. M., on June 25, returned a verdict answering in the affirmative the question set out above.

Defendants moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial; and the Court, after hearing arguments thereon, issued its Order resolving all legal issues in favor of plaintiff and denying defendants' motions. The Court held that upon the jury finding that the

plaintiff was the child of William S. Edwards he was entitled to inherit as an heir at law of James M. Edwards, deceased. Accordingly, judgment was ordered in favor of plaintiff for the sum of $1,797.71, together with interest at six per cent from February 11, 1959, against each of the defendants individually; and they now appeal, contending first that the Court erred in admitting into evidence the U. S. Official Census returns of 1920 which contained information relative to plaintiff.

Appearing thereon were the names of Will Edwards and Mamie Edwards as husband and wife and Waites Edwards, Roger Edwards, William Edwards, and Robert Edwards appearing as sons, together with sex, race, age and other information with respect to the plaintiff, Waites Edwards.

Title 13 U. S. C. A. § 9(a) prohibits the use of the census information for certain purposes and Section 8(a) of this Title provides:

"The Secretary may, upon a written request, and in his discretion, furnish to Governors of States and Territories, courts of record, and individuals, data for genealogical and other proper purposes, from the population, agriculture, and housing schedules prepared under the authority of sub-chapter II of chapter 5, upon the payment of the actual, or estimated cost of searching the records and $1.00 for supplying a certificate."

And subsection (c) of Section 8 provides:

"In no case shall information furnished under the authority of this section be used to the detriment of the persons to whom such information relates."

Plaintiff, having obtained this information concerning himself, introduced it into the record over defendants' objection. The exhibit appears to be complete from margin to margin as to plaintiff but was not complete as to the others with only the names heretofore listed being included as sons of the named Will Edwards. The question of the relationship of the defendants to each other and to the parents was

undisputed and not before the Court, the only question being the parentage and relationship of the plaintiff. The use of the census is prohibited when the information obtained is detrimental of the persons to whom such information relates, and defendants contend that this report was detrimental to them in violation of the provisions of the Act in that it was used to their detriment and refer to it as being highly damaging and having considerable bearing on the verdict.

The census reports were compiled by enumerators, calling upon the homes in their respective areas and ascertaining by inquiry from specified persons certain information required for the census or survey, Title 13 U. S. C. A. § 25 (c), Cumulative Annual Pocket Part. These enumerators were therefore required by law to perform these duties and were not merely acting under the direction of some superior officer with respect to the matters shown on the census report. The records, therefore, were not made merely for the purpose of ascertaining and recording facts appearing thereon but are made by officers under oath, whose declarations are proof upon the subject of pedigree, etc., *Flora v. Anderson*, C. C., 75 F. 217. See also *Priddy et al. v. Boice*, 201 Mo. 309, 99 S. W. 1055, 9 L. R. A., N. S., 718.

Census records were held to be admissible in *Doto v. United States*, 1955, 96 U. S. App. D. C. 17, 223 F. (2d) 309; and in *Harjo v. Johnston et al.*, 187 Okl. 561, 104 P. (2d) 985, where it was held that a guardian's failure to use the census records in a proceeding to determine the interest of a minor in certain real estate amounted to fraud when the guardian knew that the census report showed the relationship of the minor to be of full blood but consented to an allocation to the minor of a division of the property based upon half blood interest as his share of the estate.

We are constrained to the view that the framers of the Act did not use the word "detriment" as applying to some loss that might follow from the information furnished. It may be assumed that the information

furnished from the census files upon request of a private individual reflects the truth. The use of such information to the detriment of those to whom it relates does not mean detriment in the sense of a financial loss flowing from establishing the truth in a Court of law. If plaintiff is the son of William S. Edwards and a full brother of defendants, he is entitled to an equal share and they have not been deprived of anything that was lawfully theirs but only that which they had no lawful right to claim as theirs. In this they have suffered no detriment within the contemplation of the Act.

This conclusion apparently is in accord with the majority of the decisions on this question; see *Campbell et al. v. Everhart et al.,* 139 N. C. 503, 52 S. E. 201; and 3 Wigmore on Ev., Section 1671, and annotations therein.

■ Appellants next contend error in that plaintiff was permitted to bring out under cross examination testimony concerning the amounts sought to be recovered in another action involving the same question.

When James M. Edwards died, he left surviving him three sets of nephews and nieces, the children of three predeceased brothers. Plaintiff and defendants are all members of one set, the children of William S. Edwards. The personal property of the estate was distributed to the nephews and nieces, one-third to each set. The plaintiff, Waites T. Edwards, was omitted from the division of the one-third distributed to the members of his set and brought the instant action to recover from each other member of his set his share distributed to each of the defendants. Besides this fund, which was distributed, the deceased James M. Edwards was the beneficiary of a trust fund established by his father. The assets of the trust fund were to be held during the life of James M. Edwards and applied for his benefit. Upon the death of the beneficiary, the trust provided for the assets to be distributed among the heirs of the beneficiary. The distributees of the trust corpus and the takers of James M. Edwards' estate therefore are identical parties. The trust assets con-

sisted principally of $91,000.00 in cash and bonds, and a contract for the sale of certain realty at a price of $625,000-.00. The time has arrived for the trust to end and the corpus paid out. Mr. Love, an attorney of Greenville, South Carolina, testified that he had brought suit as trustee against all the nephews and nieces, in which it is denied that the plaintiff Waites T. Edwards is entitled to any part of the trust assets and calls on him to establish his claim or forever be barred. In order to establish his claim he has only to prove that his father was William S. Edwards, the identical question before the Court at the trial of the instant case. If Waites T. Edwards is successful on that issue, each of the defendants here will have his share of the corpus of the trust fund reduced. William M. Edwards, a defendant here, but trustee and plaintiff in the suit over the trust assets testified that if Waites were entitled to a share, the witness' share would be reduced from $60,000.00 to $50,000.00. Defendant Joseph V. Edwards testified to the same effect. Each of the defendants here has a financial interest of the difference between the two amounts, or some $10,000.00 at stake in the other suit, and that stake will depend on a jury's answer to the identical question that was posed to the jury in the instant action.

The admission of testimony is ordinarily left to the discretion of the trial Judge, and we fail to see wherein defendants were in anywise prejudiced by the introduction of the testimony complained of, which related principally to what amounts each would be entitled to under the circumstances.

Defendants next contend that the jury was returned to the jury room to continue their deliberation for the third time in violation of the provisions of Section 38-303, Code of Laws of South Carolina, 1952, which states:

"When a jury, after due and thorough deliberation on any cause, return into court without having agreed upon a verdict, the court may state anew the evidence or any part of it and explain to them anew the law applicable to the case and

may send them out for further deliberation. But if they return a second time without having agreed upon a verdict they shall not be sent out again without their own consent unless they shall ask from the court some further explanation of the law."

The pertinent words for the purpose of this appeal are: "they shall not be sent out again without their own consent * * *." An examination of what transpired reveals that the Judge, after instructing the jury as to why it was important that they find a verdict, concluded with these words:

"* * * I'm going to ask you in all seriousness, Gentlemen, to make one more attempt at this case. When you tell me you can't do it, that's going to be the end of it, because I'm not going to send you back again. So, I'm putting it right straight up to you, see what you can do with it, Gentlemen. Was there any question any of you Gentlemen wanted to ask?"

There was no response or indication of unwillingness on the part of any member of the jury, but on the contrary they returned immediately to the jury room for further deliberation. No verbal acceptance of the request of the trial Judge was made, but consent was implied. Had there been a statement to the effect that further consideration of the case was without their consent, it would have become the duty of the trial Judge to discharge them. However, under the circumstances, if the Judge was satisfied in the exercise of his discretion that the jury consented to return for further deliberation, he should not have dismissed them but permitted further deliberation as was done in instant case; *State v. Rowell,* 75 S. C. 494, 56 S. E. 23; *State v. Freely,* 105 S. C. 243, 89 S. E. 643; *State v. Drakeford,* 120 S. C. 400, 113 S. E. 307. In reaching this conclusion, we are not unmindful of *State v. Kelley,* 45 S. C. 659, 24 S. E. 45; *State v. Simon,* 126 S. C. 437, 120 S. E. 230; and *Rowland v. Harris et al.,* 218 S. C. 42, 61 S. E. (2d) 397, which facts are not apropos here.

Defendants next contend that the verdict was contrary to the preponderance of the evidence.

An examination of the lengthy record reveals much testimony supporting both views, the preponderance of which is a matter for the jury and the trial Judge as this Court has jurisdiction to correct errors of law only, Art. 5, Sec. 4, Constitution of the State of South Carolina, 1895, and an Order based on a question of fact or upon both law and fact is not appealable; see Appeal & Error, South Carolina Digest, Secs. 1001-1005.

For the foregoing reasons we are of opinion that all exceptions should be dismissed and the judgment appealed from affirmed, and it is so ordered.

Affirmed.

OXNER, LEGGE, MOSS and LEWIS, JJ., concur.