505 S.E.2d 360

Gary E. BUFF, Respondent,

v.

SOUTH CAROLINA DEPARTMENT OF
TRANSPORTATION, Appellant.

SOUTHEASTERN FREIGHT LINES, Respondent,

v.

SOUTH CAROLINA DEPARTMENT OF
TRANSPORTATION, Appellant.

No. 2881.

Court of Appeals of South Carolina.

Heard June 2, 1998.

Decided Aug. 31, 1998.

Rehearing Denied Oct. 21, 1998.

474

James D. Nance and Amy P. Shumpert, both of Law Office of James D. Nance, Aiken, for appellant.

Gary W. Popwell, Jr., of Lee, Eadon, Isgett & Popwell; and Pope D. Johnson, III, of McCutchen, Blanton, Rhodes & Johnson, Columbia, for respondents.

HEARN, Judge:

Respondents Gary Buff and Southeastern Freight Lines (Southeastern) brought this negligence action against Bobby Carter and the South Carolina Department of Transportation (DOT) arising out of an automobile wreck between Buff and Carter. At trial, the jury found Carter ninety percent at fault and DOT ten percent at fault, and awarded damages to Buff and Southeastern. DOT appeals, arguing the trial court should have granted its motions for directed verdict, JNOV, and a new trial. We affirm in part, reverse in part, and remand for a new trial.

## FACTS

Buff, an employee of Southeastern, was driving a Southeastern truck north on U.S. 25. Carter, traveling east on U.S. 378, failed to stop for a stop sign at the intersection of these highways. Buff and Carter collided. Carter and two of his passengers were killed.

## *DISCUSSION*

### I.  S.C.Code Ann. § 15–78–60(14) (Supp.1997)

■ DOT first argues the trial court erred in failing to grant a directed verdict or JNOV based on S.C.Code Ann. § 15–78–60(14) (Supp.1997).  We disagree.

Section 15–78–60(14) of the Tort Claims Act provides an exception to liability for a governmental entity for "any claim covered by the South Carolina Workers' Compensation Act, except claims by or on behalf of an injured employee to recover damages from any person other than the employer, the South Carolina Unemployment Compensation Act, or the South Carolina State Employee's Grievance Act." DOT argues because Buff received workers' compensation from his private employer for injuries suffered in the accident, his claim against DOT is barred.

■ DOT misapprehends the statute.  DOT's interpretation would never allow a claim by a private employee against a third-party governmental tortfeasor.  Courts will reject an interpretation leading to a result so plainly absurd that it could not possibly have been intended, or would defeat plain legislative intention; if possible, courts will construe the statute so as to escape absurdity and carry the intention into effect.  *Historic Charleston Foundation v. Krawcheck,* 313 S.C. 500, 507, 443 S.E.2d 401, 405–406 (Ct.App.1994).

We read the statute to bar claims by *government* employees against their employer when those claims are covered by workers' compensation.  This construction of section 15–78–60(14) reconciles it with S.C.Code Ann. §§ 42–1–550 and –560 (1985), which sets forth an injured employee's right to make a claim against any third-party liable for his injury, in addition to making a workers' compensation claim.  *See* 73 Am.Jur.2d *Statutes* § 254, at 425 (1974) (courts must harmonize and reconcile laws and must adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions).

### II.  Proximate Cause

■ DOT argues the trial court erred in failing to grant a directed verdict, JNOV, or a new trial on the grounds that any

action or inaction on the part of DOT was not the proximate cause of the accident. In ruling on motions for directed verdict and JNOV, we view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions; the motion must be denied where either the evidence yields more than one inference or its inference is in doubt. *Strange v. South Carolina Dept. of Highways & Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994). Moreover, causation issues generally present questions of fact for the jury. *Oliver v. South Carolina Dept. of Highways & Pub. Transp.*, 309 S.C. 313, 318, 422 S.E.2d 128, 131 (1992).

Based on the number of accidents at the intersection and on the nature of the intersection itself, Buff and Southeastern's experts testified that DOT knew or should have known the intersection was dangerous, and that the operational controls in place were not adequate. The experts testified that if DOT had installed rumble strips and arranged the signs differently, the accident would not have occurred. DOT maintains that it installed an oversized stop sign and an overhead stop sign with red flashing lights in place at the intersection. It points out that it complied with all existing regulations and standards applicable to signs.

While we agree this evidence alone may not have been enough to send the case to the jury, DOT additionally failed to follow its own procedures and conduct a special investigation and complete a specialized accident report after a fatality at the intersection in 1991. This fact, coupled with the plaintiffs' expert testimony, was sufficient to create a jury issue as to whether DOT's inaction proximately caused the accident.

### III. Motion for a Mistrial

The jury began deliberations at 4:25 p.m. After asking two questions regarding the law and evidence, the jury sent a note at 8:00 p.m. stating, "We are deadlocked." The judge instructed the jury under *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), dismissed them for the day, and instructed them to return at 9:00 a.m. to continue deliberations. At 10:50 a.m. the following day, the jury returned with a note stating, "We are deadlocked eleven to one with no

chance of reaching an agreement." Thereafter, the judge instructed the jury as follows:

> I have received your note from the bailiff that indicates that, up until this point in time, Mr. Foreman, we've been unable to reach a unanimous verdict.
>
> Again I want to thank you for your deliberations up to this point. I did want to give you some additional instructions that may be of some benefit to you. So if you would consider this fact. If I have to declare a mistrial in this case it would require us to come back and try the case again before another jury with great cost and expense to both sides. Of course it's an important case for both sides.
>
>     \*     \*     \*     \*     \*     \*
>
> But I'm going to ask you to try if you can to make one last effort at trying to reach a unanimous verdict, if possible. Again, I'm not going to ask any individual juror to give up his or her conscious convictions about the case just simply to reach a verdict but on the other hand I am going to ask you to re-evaluate your position and if there is some question about the law, I'll be more than happy to instruct you on the law if there is some misunderstanding in that regard.
>
>     \*     \*     \*     \*     \*     \*
>
> In any event I believe both sides would like, if possible, for you to reach a unanimous verdict if you can. So I'm going to continue the trial in the other case and ask you to make a continued effort to reach a unanimous verdict and let me know.

The jury returned for deliberations. Approximately thirty minutes later the jury sent a note to the trial judge explaining that they were making progress. The jury returned with a verdict at 11:50 a.m.

DOT argues the trial court erred in failing to grant its motion for mistrial after the jury returned deadlocked for a second time. We agree. South Carolina Code Ann. § 14–7–1330 (1976) provides:

> When a jury, after due and thorough deliberation upon any cause, returns into court without having agreed upon a verdict, the court may state anew the evidence or any part of it and explain to it anew the law applicable to the case

and may send it out for further deliberation. But if it returns a second time without having agreed upon a verdict, it shall not be sent out again without its own consent unless it shall ask from the court some further explanation of the law.

Buff argues the South Carolina Supreme Court's decision in *Edwards v. Edwards*, 239 S.C. 85, 121 S.E.2d 432 (1961), is controlling. In *Edwards*, the trial judge instructed the jury to continue deliberations a third time in an attempt to reach a verdict. In doing so, the judge stated in his final words to the jury, "When you tell me you can't do it, that's going to be the end of it, because I'm not going to send you back again." *Edwards*, 239 S.C. at 93, 121 S.E.2d at 436. The judge then invited the jury to address him, inquiring "Was there any question any of you Gentlemen wanted to ask?" *Id.* The supreme court found the judge had not abused his discretion in concluding the jurors impliedly consented to the continuation of deliberations. In so holding, the supreme court stated: "There was no response or indication of unwillingness on the part of any member of the jury, but on the contrary they returned immediately to the jury room for further deliberation. No verbal acceptance of the request of the trial Judge was made, but consent was implied." *Id.*

We believe *Edwards* is distinguishable from the present case. Though the implication of consent may be debatable in *Edwards*, it was at least based on palpable criteria; that is, the judge's clear words imparting to the jurors that they controlled the extent of future deliberations. The judge unequivocally told them that when they said they had had enough, deliberations were over, and he would not send them out again. Coupled with his invitation to address questions to him, the supreme court concluded that drawing the inference of consent was reasonable, and therefore, not an abuse of discretion.

In contrast, the judge's instruction in this case does not impart the message that the jurors controlled the extent of future deliberations, except by reaching a unanimous verdict. Here the jury said they were deadlocked, and received an *Allen* charge. After further deliberations, they sent a note again conveying the message that they were deadlocked. The

note is specific, and it is significant for two reasons. First, it unequivocally states that there was "no chance of reaching an agreement." Second, it conveys the fact that eleven jurors were in agreement, with only one hold out.

The significance of the first part of the jury's message is that it cannot be viewed as equivocal, or as asking for further instruction on the law. The significance of the second part of the note is that it describes circumstances under which the requirement of further deliberations is most likely to have a coercive effect, in the case of the lone hold-out who feels the most peer pressure as the perceived cause of the continued confinement.

■ It must be remembered that juries are almost certainly unaware of section 14–7–1330. It is unrealistic to assume jurors know, absent instruction, that they cannot be compelled to continue deliberations, and have the option of refusing to do so. In fact, it is antithetical to every other aspect of the relationship of judge and juror in courtroom proceedings. No one can seriously contest the judge's authority to sequester jurors and order them to deliberate, with the inherent power to punish those who refuse to obey. It is for this reason that the difference between the departing words of the judge in *Edwards,* which advised the jury that they controlled the extent of future deliberations, and those of the judge in this case, which did not, is a critical distinction. Stated simply, unless the jury is told in some fashion that they have a choice, their silence cannot reasonably be construed to imply consent.

The judge's final words to the jurors in this case were as follows: "So I'm going to continue the trial in the other case and ask you to make a *continued* effort to reach a unanimous verdict and let me know." (emphasis added). Undoubtedly these words were intended by the very capable trial judge to convey comfort to the jury by letting them know that he would be available in the adjoining courtroom. But they also suggest that the judge is requiring the jurors to continue the deliberations until they reach a unanimous verdict. This is so because they first send a message to the jury that there is no time deadline on the deliberations from the judge's perspective, because they do not interfere with the daily business of the court. (Stated another way, "I'm going to be here any-

way"). Secondly, they directly describe the required effort to be a "continued" one. Though the judge may have intended the words "continued effort" to mean "another effort continued from before," a more obvious meaning is that the effort being required is open-ended; that is, a continuing one, until a unanimous verdict is rendered.

A jury's perception of judicial control over its time is undeniable. Under these circumstances, to read the inference of consent into the jury's total silence following the judge's instruction to continue deliberating in this case is pure fiction, especially in the wake of their written note. To hold otherwise would mean that a trial judge may reasonably conclude a jury has consented to continue deliberating any time the judge tells them to do so, unless they affirmatively respond by voicing an objection. In view of the relationship of judge and jury in all aspects of courtroom proceedings, this inference is unreasonable under the departing instructions given in this case.

The legislature has determined that the chance of obtaining a coerced verdict is too great to allow a judge to require further deliberation following a second return of the jury to the courtroom without having agreed upon a verdict, unless it consents to do so. As stated in *State v. Simon*, 126 S.C. 437, 444, 120 S.E. 230, 232–33 (1923):

> [I]t was the clear intendment of the statute to give the jury the right to indicate to the Court its own view of when time for due and thorough deliberation had elapsed by returning "a second time without having agreed upon a verdict," and to make that action decisive of the question if accompanied by any expression of unwillingness to retire for a third time
> . . . .

This language is clear. The jury's note is clear. By reading consent into the jury's silence in this case the trial judge overlooked this legislative mandate. We therefore reverse and remand for a new trial.[1]

Accordingly, the above decision is

---

1. DOT raised several other issues in its brief. However, counsel for DOT explicitly abandoned several issues at oral argument before this court. We need not reach DOT's remaining arguments in view of our above holding.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HOWARD, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, Judge, dissenting:

I respectfully dissent from the majority's conclusion that the trial judge's instructions violated S.C.Code Ann. § 14–7–1330 (1976) (procedure when jury fails to agree). Therefore, I would affirm.

In *Edwards v. Edwards,* 239 S.C. 85, 121 S.E.2d 432 (1961), the trial court instructed the jury after its second deadlock as follows:

I'm going to ask you in all seriousness, Gentlemen, to make one more attempt at this case. When you tell me you can't do it, that's going to be the end of it, because I'm not going to send you back again. So, I'm putting it right straight up to you, see what you can do with it, Gentlemen. Was there any question any of you Gentlemen wanted to ask?

Our Supreme Court analyzed the trial judge's instructions in light of the defendants' assertion that the comments violated S.C.Code Ann. § 38–303 (1952) (now § 14–7–1330), which provided a trial judge may not send a jury out for further deliberation without the jury's consent once it has twice indicated it is unable to agree on a verdict. The court stated:

There was no response or indication of unwillingness on the part of any member of the jury, but on the contrary they returned immediately to the jury room for further deliberation. *No verbal acceptance of the request of the trial Judge was made, but consent was implied.* Had there been a statement to the effect that further consideration of the case was without their consent, it would have become the duty of the trial Judge to discharge them. However, under the circumstances, if the Judge was satisfied in the exercise of his discretion that the jury consented to return for further deliberation, he should not have dismissed them but permitted further deliberation as was done in [the] instant case; *State v. Rowell,* 75 S.C. 494, 56 S.E. 23; *State*

*v. Freely,* 105 S.C. 243, 89 S.E. 643; *State v. Drakeford,* 120 S.C. 400, 113 S.E. 307.

*Id.* at 93, 121 S.E.2d at 436 (emphasis added).

In *Edwards,* the court held verbal acceptance by the jury is not required and consent would be implied where the trial judge is satisfied that the jury has in fact agreed to continue deliberating. Citing the precedent of *Edwards,* our Supreme Court stated in *State v. Pauling,* 322 S.C. 95, 99, 470 S.E.2d 106, 109 (1996): "If the judge is satisfied that the jury consents to return for further deliberation, he should not dismiss it, but should permit further deliberation." The court noted, "[W]hether the jury consented to further deliberation or not, because it asked for further explanation of the law, the judge did not err in sending the jury out a second time after he answered the question." *Id.* at 100, 470 S.E.2d at 109.

*Pauling* and the cases cited in *Edwards* indicate some manifestation of unwillingness to return is necessary to find a jury was forced to deliberate without its consent. For example, in *State v. Rowell,* 75 S.C. 494, 509, 56 S.E. 23, 29 (1906), it was said: "[W]e hold that there must be some indication of unwillingness on the part of the jury to again retire to agree upon the verdict, and they must not ask for a charge by the judge upon any matters committed to the jury . . . ." In *Rowell,* the jurors gave no objection when asked to return for further deliberation; they even asked the judge to repeat the law on self-defense.

In *State v. Freely,* 105 S.C. 243, 89 S.E. 643 (1916), the court observed that even in cases where the jury does not ask for instructions on the law and the jury is not advised that it cannot be sent back without its consent, there is no violation of the statute where it appears to the judge, under the circumstances, that the jury has consented to the return. This clearly encompasses the implied consent approved in *Edwards:*

> The jury were not advised that they could not be sent back without their consent. They did not ask for instructions on the law.
>
> In none of this was there any violation of the statute. . . .
>
> . . . At the second return of the jury, without having agreed upon a verdict, they might have asked for further explana-

tion of the law, in which event the court might have again sent them out. That will not be questioned. And at the second return without having agreed upon a verdict, they might be sent out again by their own consent. That will not be disputed.

So the question is, did it appear to the judge, under all the circumstances there presented, that the jury consented to return the third time? Plainly if the jury had said: "We can't agree. Its no use to send us back; we desire to be discharged"—the duty would have been imperative upon the judge to discharge them. If the same thing had been manifest from all the circumstances, the same imperative duty would have operated. If the circumstances satisfied the judge, in a wise exercise of his discretion, that the jury consented to the return, then it was lawful to return them. The exercise of such a discretion at so delicate stage of a trial ought not to be disturbed unless it was obviously wrongly exercised.

*Id.* at 247–48, 89 S.E. at 644.

In the case now before us, the judge advised the jury in pertinent part:

But I'm going to ask you to try *if you can* to make *one last effort* at trying to reach a unanimous verdict, *if possible.* Again, *I'm not going to ask any individual juror to give up his or her conscious convictions about the case just simply to reach a verdict* but on the other hand I am going to ask you to re-evaluate your position *and if there is some question about the law, I'll be more than happy to instruct you* on the law if there is some misunderstanding in that regard. (Emphasis added.)

The judge's final comment to the jury was as follows:

In any event I believe both sides would like, *if possible,* for you to reach a unanimous verdict *if you can.* So I'm going to continue the trial in the other case and ask you to make a continued effort to reach a unanimous verdict and let me know. (Emphasis added.)

The judge's statements that he was not asking any juror to give up his or her convictions about the case coupled with his request to make "one *last* effort" to reach a verdict "if possible" does *not* mandate that the jury return with a unani-

mous verdict. Rather, as in *Edwards,* the judge asked the jury to make one *last* attempt at agreement, with the possibility remaining that the jury might be unsuccessful in that effort, resulting in a mistrial. This language compares directly with the judge's request in *Edwards* that the jury "make one more attempt at this case." Although the judge did not explicitly ask the jury whether it consented to resume deliberations after the second deadlock, the jury continued its deliberations without complaint or question, just as in *Edwards.* Thereafter, the jury sent a note to the trial judge indicating that it was making progress, thus further manifesting consent to continue deliberations.

In a triumph of semantics over realism, the majority imposes a gargantuan burden on trial judges to communicate with jurors in a rigid, strict, and legalistic manner. The majority emasculates the principle of "implied consent" recognized in *Edwards.* This record does not contain any indicia of coercion. Additionally, the writing penned by the majority extirpates "continued effort" from the judge's final comment and misconstrues the efficacy of the phrase. Nothing in the record supports the conclusion by the majority that "the effort being required is open-ended; that is, a continuing one, until a unanimous verdict is rendered." The absurdity resulting from this interpretation is a mathematical counting of jury appearances in the courtroom with complete surrender of judicial discretion. It is clear from the judge's final remarks asking the jury to reach a verdict "if possible" and "if you can" that there was no mandate to reach agreement.

In rejecting the applicability of *Edwards* to the case at bar, the majority attaches significance to a mystical, "mega force" relationship *inter sese* judge and juror. The majority avers, "No one can seriously contest the judge's authority to sequester jurors and order them to deliberate, with the inherent power to punish those who refuse to obey."

The inherent authority to sequester jurors or to punish for contempt is inapposite to this trial record. The trial judge did *not* force jury deliberation in this case. The majority notes "[a] jury's perception of judicial control over its time is undeniable." Jury perception to the contrary, as averred by the majority, the judge's colloquy with the jurors was within

the confines of section 14–7–1330. The judge in this instance merely asked the jurors to make one last effort to obtain a verdict, if possible, without doing harm to their individual consciences; the judge in no way mandated that the jury stay until it returned a unanimous verdict. *Cf. State v. Kelley,* 45 S.C. 659, 24 S.E. 45 (1896) (court found violation of the predecessor statute to section 14–7–1330 where jurors were forced to continue deliberations while confined in the jury room overnight despite the fact that they sent word on two occasions that they desired to be let out).

In *State v. Simon,* 126 S.C. 437, 120 S.E. 230 (1923), cited by the majority, our Supreme Court found reversible error where the jury was notified that they would be kept together in the jury room overnight for a specified time, about 15½ hours, unless an agreement was sooner reached. In *Simon,* the jury retired to deliberate at 4:00 p.m. and returned at 5:40 p.m. to report they were deadlocked. Just before 6:00 p.m., the judge informed the jurors,

> I will give you this envelope, and if you agree between now and 9:30 tomorrow morning, you can come out. If you do not agree between now and then, I can talk to you then, and, if I find you still cannot agree, I would not keep you there any longer.

*Id.* at 442–43, 120 S.E. at 232.

Our Supreme Court began by reviewing the purpose of the statute prohibiting a jury from being forced to deliberate a third time without its consent:

> [I]t was the clear intendment of the statute to give the jury the right to indicate to the court its own view of when time for due and thorough deliberation had elapsed by returning "a second time without having agreed upon a verdict," and to make that action decisive of the question *if accompanied by any expression of unwillingness to retire for a third time* .... If so, it is obvious that the effect of a *requirement* that the jury shall be kept together for a specified time, unless an agreement is sooner reached, would be to deprive the jury of the right to an earlier discharge in the contingency provided for by the statute. Such bearing of the statute is to be considered in connection with the general rule which is thus stated by the author of an extended note

on this subject (11 Ann. Cas. [1129] at page 1136 [20 S.D. 489, 107 N.W. 829]):

"In most of the jurisdictions it is held that the trial court should not mention how long he intends to keep the jury deliberating"—citing cases.

*Id.* at 444–45, 120 S.E. at 232–33 (emphasis added).

The *Simon* court concluded that reversal was warranted based on the judge's instructions that the jury could not cease deliberation before the specified time *unless* it reached a unanimous verdict because such instruction was coercive:

When the jury were thus squarely faced with a night in the jury room, absence from unprotected families, and a grueling endurance test of 15½ hours in the kind of quarters usually available for that purpose, we are unable to resist the conclusion that the judge's definite announcement, in effect, that the jury could either find a verdict and walk out or remain in the jury room for 15 ½ hours was a more potent influence in the writing of the verdict than any consideration having to do with the law and the evidence. Under all the circumstances of this particular case, we are impressed with the view that the verdict was improperly influenced to the defendant's prejudice by what was in the nature of a Hobson's choice thus presented to the jury. The appellant's third exception must therefore be sustained.

*Id.* at 446, 120 S.E. at 233.

It is evident from *Simon* that a trial judge may not coerce a verdict by forcing a jury to deliberate for a prescribed period with no chance of ceasing deliberations unless it returns with a verdict. The court's obvious concern was that a jury would not be able to determine when it would cease deliberations as contemplated by the statute if the judge could order deliberations to continue despite the jury's objection or continued inability to agree. That is not the situation in the case now before us. The judge here did not require deliberations to continue for a specified period, or even until a verdict was reached. Just as in *Edwards,* the judge simply asked them to make one last effort to reach a verdict, "if possible."

As for the jury's note indicating a second deadlock, it was necessarily written before the judge gave his final instructions requesting one final effort by the jury; therefore, it is not

dispositive on the jury's reaction to the judge's subsequent request for one "last" effort to reach a verdict, "if possible." The majority opinion in the application of section 14–7–1330 creates a judicial straightjacket in regard to the communication process of judge and juror. Without any authority or precedent the majority concludes *ex cathedra* "[t]he significance of the second part of the note is that it describes circumstances under which the requirement of further deliberations is most likely to have a coercive effect, in the case of the lone hold-out who feels the most peer pressure as the perceived cause of the continued confinement." Experientially, as a former circuit judge, I do not believe this conclusion is warranted (I confess this statement has no precedential potency).

In my opinion, the trial judge's instructions did not violate section 14–7–1330. Since the jury returned without indicating an unwillingness to resume deliberations after the judge's comments, and even indicated their progress in the case before returning a verdict, a mistrial was not warranted. I see no meaningful distinction to be drawn from the Supreme Court's precedent in *Edwards,* 239 S.C. 85, 121 S.E.2d 432 (sending jury back after it had returned a second time was not breach of statute where jurors made no response upon being sent back again but had immediately returned to the jury room, thereby implying consent). *See also Freely,* 105 S.C. 243, 89 S.E. 643 (no violation of the statute if judge could find there was consent to deliberate even though judge did not inform jury it could not be forced to resume deliberations without its consent and the jury asked for no further instructions). Accordingly, I would affirm.