## 20292

The STATE, Respondent, v. Oliver MASSEY, Appellant.
(229 S. E. (2d) 332)

*Messrs. Roy T. Stuckey* and *Vance L. Cowden,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Asst. Atty. Gen.,* of Columbia, *for Respondent,*

October 19, 1976.

RHODES, Justice:

Appellant Oliver Massey appeals from his conviction as an accessory before and after the fact of burglary and armed robbery. He was sentenced in the Court of General Sessions of Lancaster County to life imprisonment plus twenty years. Appellant contends that he is entitled to a reversal of his conviction. We disagree and affirm the conviction.

The following questions are presented for our consideration:

(1) Did the resident circuit judge commit reversible error in refusing to grant appellant's motion for a change of venue on the ground that it was impossible for appellant to obtain a fair trial by an impartial jury in Lancaster County?

(2) Did the trial judge commit reversible error by refusing to grant appellant's motion for a directed verdict on the charges of murder, burglary, and armed robbery?

(3) Did the acquittal of John Trowery prior to the conviction of Oliver Massey preclude the State from prosecuting Massey as an accessory to Trowery on the theory that Trowery's acquittal had the effect of determining that there was no principal to whom Massey could be convicted as being an accessory?

(4) Did the Supreme Court's refusal to provide appellant with all the documents requested in his Motion for

Production of Documents and Extension of Time result in a denial to appellant of his right to appeal his conviction?

Appellant was indicted in September of 1973 for murder, burglary, and armed robbery and accessory before and after the fact of murder, burglary, and armed robbery in connection with the death of Dr. J. D. Pittman and the armed robbery of his home in Lancaster County in February of 1973. The principal felon named in the Massey indictment was John Wells Trowery. During the pendency of appellant's indictment, Trowery was tried for and acquitted of the charges of murder, burglary, and armed robbery stemming from the Pittman homicide.

The evidence at appellant's trial established that at approximately eight o'clock P.M. on February 16, 1973, a large black male, armed with a pistol, broke into the home of Dr. Pittman while he and his wife were viewing television. The intruder demanded to know where the Pittman's money was kept, and when Mrs. Pittman answered that there was no money in the house, she was struck on the head. Dr. Pittman attempted to repel the intruder and was struck several times on the head by a blunt instrument causing his death.

Mrs. Pittman testified that the intruder telephoned someone to come get him, that he had a northern accent, and that he was apparently unfamiliar with who Dr. Pittman was. She also heard a second male voice in the house but never saw the second intruder.

The State presented two witnesses who testified that appellant approached them in 1972 and discussed robbing the Pittman house. Appellant told them that Dr. Pittman kept $100,000.00 in his house and explained how the robbery would take place. Both of these witnesses were incarcerated at the time that Dr. Pittman was murdered.

Another witness for the State, Virginia Bradley, with whom appellant had been living in Lancaster, testified that

she was with appellant when he and another man travelled to Coatsville, Pennsylvania, during the week prior to Dr. Pittman's death. On the return trip, she overheard the other man tell appellant "not to mess with Martin." Bradley later learned that "Martin" was John Trowery's brother.

Bradley further testified that on the night before the Pittman killing, appellant made a long distance telephone call to Pennsylvania. The next morning, February 16, 1973, appellant received a telephone call and then left the house. Bradley saw appellant later the same day at her shop where he came and picked up some women's stockings. She testified that appellant left her shop before six o'clock P. M. on the day the Pittman house was broken into and that she did not see him until late that night when she attempted to borrow money from him. Appellant told her that he could not lend her any money because he had spent $500.00 to send "those boys back to Pennsylvania." Appellant informed Bradley that they got only "a trash can full of silver."

Stockings found in the Pittman home were identified by Bradley as similar to the kind appellant had taken from her shop on February 16, 1973. Bradley testified that during an argument with appellant two months after the incident at the Pittman home, appellant told her that her car had been used in the Pittman murder.

The State offered proof that the telephone call made by appellant on the day before Dr. Pittman was killed was to Trowery's residence in Coatsville, Pennsylvania. Trowery, who did not testify at appellant's trial, was described by witnesses as weighing 220 pounds and standing six feet two inches tall.

The State also introduced a written statement made by appellant on August 2, 1973, while he was being held in custody at Columbia, admitting that he and another man met someone named "John" in Coatsville, Pennsylvania, and that "John" subsequently came to Lancaster and asked

appellant to drop him off three blocks from the Pittman home. Appellant admitted that he transported "John" to a location three blocks from Dr. Pittman's house on February 16, 1973.

## QUESTION 1

Appellant contends that the resident circuit judge (who was not the trial judge in appellant's case) committed reversible error in failing to grant appellant's motion for a change of venue. Much of appellant's argument is predicated on the fact that a different circuit judge granted John Trowery's motion for a change of venue from Lancaster County. Appellant argues that granting the change of venue for Trowery was binding upon the judge who considered appellant's motion. We do not agree. This Court has stated many times that it is within the sound discretion of the court as to whether a motion for a change of venue should be granted. *State v. Galloway,* 263 S. C. 585, 211 S. E. (2d) 885 (1975); *State v. Pruitt,* 260 S. C. 396, 196 S. E. (2d) 107 (1973); *State v. Swilling,* 249 S. C. 541, 155 S. E. (2d) 607 (1967). There is no rule which requires the court who considered appellant's motion for a change of venue to grant it simply because a different court deemed it essential to grant Trowery's motion. It was within the discretion of the court in appellant's case to consider appellant's motion and to grant or deny it as the facts and circumstances warranted.

It is well settled, of course, that while a motion for change of venue on the ground that an impartial jury cannot be obtained is a discretionary matter, it "is a judicial, and not an arbitrary, discretion." *State v. Mouzon,* 231 S. C. 655, 99 S. E. (2d) 672 (1957); *State v. Jackson,* 110 S. C. 273, 96 S. E. 416 (1918). Only if the court has clearly abused its discretion in denying the motion will the Supreme Court review that decision and reverse; moreover, such denial must be clearly shown to have prejudiced the rights of appellant. *Galloway, supra.* We find no such showing on this record.

One of appellant's chief contentions regarding the change of venue question is that he could not obtain the assistance of counsel from the local bar in Lancaster. Appellant does not contend that the failure to have local counsel resulted in ineffective assistance of counsel, but urges that this reflected prejudice against him in the community. It has been stated by this Court previously that ". . . ordinarily the fact that a defendant is unable to retain local counsel is 'a striking index of the condition of public sentiment'." *Mouzon, supra.* Appellant argues that such index is established in his case. He points out that, of the affidavits of local counsel invited by the resident circuit judge to aid him in his decision on the motion, seven Lancaster County attorneys swore they would not or could not represent appellant under any circumstances.

In *Mouzon* the Court dealt with the same kind of problem with which we are faced here. There appellant was charged with murder in Clarendon County. His motion for a change of venue was based largely on affidavits of his own counsel to the effect that, after a thorough investigation, they were convinced that their client could not get a fair and impartial trial. The trial judge, however, refused to grant the requested change. The Supreme Court stated in part the following with respect to whether or not the unavailability of local counsel to assist appellant indicated that he could not get a fair trial in Manning:

There are only about five practitioners at Manning. One was associated with the solicitor in this case. We are not definitely advised why the remaining four declined an offer of employment. It may have been for reasons other than appellant's claim of adverse public sentiment. There are several lawyers at Summerton in Clarendon County. There is no showing that they declined employment in this case.

. . . After careful consideration we are not convinced that appellant's inability to secure a Manning lawyer to assist in the case, *when considered in connection with all the*

*circumstances* [emphasis added], compels a conclusion that the trial Judge abused his discretion in refusing the motion for a change of venue. *Mouzon, supra.*

We believe that the matter of unavailability of local counsel in this case closely parallels that in *Mouzon*. The affidavits of the Lancaster lawyers who stated that they could not or would not represent appellant do not, in most instances, detail why they could not or would not do so. Additionally, the record does not reflect whether affidavits were submitted from all members of the Lancaster County bar.

Significant is the fact that, of the affidavits submitted, one attorney states that appellant never approached him seeking representation in the trial of this case. It is arguable, therefore, that if appellant had requested assistance from this attorney, it would have been provided. Another attorney swore that he would have been willing to represent appellant if there had not been extant a conflict of interest (he had assisted in the defense of Trowery).

It should be noted that appellant was represented at trial by experienced, retained counsel from Richland County. It has been held that out-of-county attorneys who allegedly were not as well acquainted with the personnel of the venire as local counsel might be "does not entitle [the] accused to a change of venue on the ground that a fair and impartial trial could not be had." 22 C. J. S., Criminal Law, § 193 (1961).

Appellant further contends that it was reversible error not to grant his motion for a change of venue because of adverse pretrial publicity in Lancaster. Appellant has presented a summary of numerous articles which appeared in the local newspapers from the date of Dr. Pittman's killing in February, 1973, until the end of June, 1974 (appellant's trial took place in September, 1974). We are not persuaded, however, that these articles amounted to publicity which prejudiced the rights of appellant. We

are not able to say that the resident circuit judge abused his discretion when he determined that "a careful study of [the newspaper articles submitted as exhibits in appellant's case] reflected restrained and responsible reporting and in no way suggest or support the claimed prejudice and bias. The articles are not calculated to inflame." [From Order denying motion for change of venue dated September 9, 1974.] Support for the court's position may be found in *Galloway, supra,* 263 S. C. at 588, 211 S. E. (2d) 885.

An extensive *voir dire* examination of the jurors, conducted by the trial judge, thoroughly probed the existence of any prejudice and bias which might exist against the appellant. Of more than thirty potential jurors examined, only two were excused by the court for cause. Each juror selected satisfied the trial judge that he or she would be guided by the testimony and would follow the law. There is nothing in the record to indicate that the resident circuit judge who denied the motion, or the trial judge who conducted the *voir dire* examination and to whom the motion was remade, abused his discretion in denying the requested change of venue on these grounds. *Id.; State v. Woods,* 189 S. C. 281, 1 S. E. (2d) 190 (1939). Finally, it is significant that trial counsel for appellant failed to exhaust all of his allotted peremptory challenges in the selection of the jurors and the alternates. This Court has indicated in the past that this factor is one to consider in determining the issue of change of venue. *State v. Cannon,* 248 S. C. 506, 151 S. E. (2d) 752 (1966).

## QUESTION 2

Appellant's contention that the trial court committed reversible error in denying his motion for a directed verdict on the charges of murder, burglary, and armed robbery is without merit. In deciding whether the court erred in failing to direct a verdict in favor of a defendant in a criminal case, the Supreme Court must view the testimony in the light most favorable to the State. When

such motion is made the trial court is concerned with the existence or nonexistence of evidence, not with its weight. The court should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty. However, it is the duty of the trial court to submit the case to the jury if there is any evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which guilt may be fairly and logically deduced. *State v. Matarazzo*, 262 S. C. 662, 207 S. E. (2d) 93 (1974), and numerous other cases collected in 7A West's South Carolina Digest, Criminal Law, Key No. 741(1) and 753(1) and (2). Unless there is a total failure of competent evidence as to the charges alleged, refusal by the trial court to direct a verdict of acquittal is not error. *State v. Bailey*, 253 S. C. 304, 170 S. E. (2d) 376 (1969); *State v. Roddy*, 126 S. C. 499, 120 S. E. 359 (1923).

Appellant admitted that he dropped off one of the assailants, presumably, a few blocks from the Pittman residence. Also, the circumstantial evidence presented by the State was sufficient to give rise to a conclusion that appellant was present in the Pittman house at the time of the incident, or that he was waiting for the perpetrators in a car immediately outside the house and that he was acting in concert with them. The jury obviously did not find this circumstantial evidence sufficiently convincing to convict appellant as a principal on the charges of murder, burglary, and armed robbery. However, the trial court properly submitted these issues to the jury.

## QUESTION 3

At common law an accessory could not be convicted unless his principal had been convicted. Thus, an accessory could only be tried either together with the principal or after the conviction of the principal. 22 C. J. S., Criminal Law, § 104(a) (1961). This rule gen-

erally applied in spite of the fact that the principal was unknown or could not be found. *Id*.

Under the statutes in various American jurisdictions and in England, the conviction of the principal is no longer a condition precedent to the conviction of an accessory. *Id*. The second part of S. C. Code § 16-2 (1962), which provides that an accessory before the fact "may be indicted and convicted of a substantive felony, whether the principal felon has or has not been convicted or is or is not amenable to justice . . .", modifies the common law rule.

At common law the acquittal of the principal had the effect of precluding a conviction of the accessory. 22 C. J. S., Criminal Law, § 104(b) (1961). The question whether § 16-2 permits an accessory to be tried and convicted notwithstanding the fact of the principal's previous acquittal is an issue which has never precisely been determined by this Court. Wisconsin, a jurisdiction with a statute almost identical to § 16-2, has held that the accessory may be convicted even though the principal has been acquitted. *State v. Hess*, 233 Wis. 4, 288 N. W. 275 (1939). The Wisconsin Court articulated the rationale in the following language:

". . . under our statute, an accessory before the fact is still to be prosecuted as such, but it is not essential to his conviction that the perpetrator of the principal crime be prosecuted or convicted; it being sufficient to prove the guilt of the principal felon." [Citation omitted.]

"The purpose of the statute was to improve the administration of justice. Referring to the common law rule, the court . . . said: 'This requirement necessarily produced more or less frequent failures in the administration of justice. If the man who actually performed the murder escaped, the accessory could not be convicted; hence the enactment of statutes to remedy the difficulty.' [Citation omitted.]

"It seems very clear that the legislative intent . . . was to provide for the prosecution of an accessory independent

of the prosecution and outcome of the prosecution of the principal. The crime of the accessory is a substantive offense . . .

". . . It would be a serious indictment of the legislature to hold, that in its effort to improve the administration of justice by abolishing some of the technicalities of the common law, that it made no provision for the prosecution and conviction of an accessory unless the principal was first prosecuted and convicted. If failure to apprehend the principal, his death or acquittal necessitates acquittal of the accessory, then our statute is no improvement over the common law . . ." *Hess, supra,* 288 N. W. at 276-277.

We agree with the reasoning of the Wisconsin Court and hold that the same applies to § 16-2. This rationale extends also to S. C. Code § 17-453 (1962),* relating to accessories after the fact. We are of the opinion that the Legislature intended that, as to accessories before the fact as well as accessories after the fact, the State should not be barred from prosecuting and convicting the accessory, even though the principal has been acquitted.

At least one case decided by this Court is relevant to the issue with which we are dealing here. In *State v. Burbage,* 51 S. C. 284, 28 S. E. 937 (1898), the indictment contained three counts. In the first count, one Rowley, the principal, was charged with the murder of one Tanner, and the appellant, Burgage was charged as accessory before the fact of murder. In the second count, Rowley and Burbage were jointly charged as principals in the murder of Tanner. In the third count, the appellant was charged as accessory after the fact of murder, alleged to have been committed by Rowley. Rowley was tried alone (the case as to Burbage having been continued by the solicitor) and was convicted of manslaugh-

---

* Section 17-453 provides that "[w]hoever becomes an accessory to a felony after the fact may be indicted, convicted and punished, whether the principal felon has or has not been previously convicted or is or is not amenable to justice . . ."

ter. When Burbage was arraigned subsequently, he moved to quash the indictment on several grounds, one of them being the fact that Rowley had been convicted of manslaughter rather than murder. Rejecting the position taken by the appellant, this Court stated the following:

It does not seem to us . . . that the fact that Rowley has been convicted of manslaughter precludes the State, on the trial of the accessory, from showing that Rowley was, in fact, guilty of murder. While, of course, we know nothing of the facts in this case, it may be that the State failed to prove malice on the trial of Rowley, by reason of the absence of a witness whose testimony could not then, but may now, be obtained. It is not difficult to conceive of a case in which the person who actually committed a homicide could not be convicted by reason of incapacity to commit a crime, and we cannot accept the doctrine contended for, which would exempt the person who procured the commission of the crime from any punishment.

There is a variety of reasons why a jury trying only a principal might fail to convict the principal, as suggested in *Burbage.* To permit a guilty accessory to interpose the fact of the principal's acquittal as a bar to his own trial is a rule which would effectively constitute an obstruction of justice.

That the jury in the trial of the accessory must find as a fact that the principal did actually commit the crime involved is a rule that remains as valid and unchanged as before. *Burbage, supra; Hess, supra.* This rule affords the accused accessory the necessary degree of protection. Unless the State can prove at the trial of the accessory that the principal is guilty, the accessory cannot be convicted. A thorough review of the evidence and the record of appellant's trial, as well as the instructions given the jury by the trial judge, convinces us that no error was committed in denying appellant's motions to quash the indictment and to grant him a directed verdict on the accessory charges.

## QUESTION 4

Finally, appellant argues that because this Court refused to provide him with each of the documents requested in his Motion for Production of Documents and Extension of Time, he was materially impeded in preparing this appeal.

The Motion for Production of Documents and Extension of Time was filed October 31, 1975. This Court denied the motion on November 4, 1975. Appellant, who had retained counsel at trial, is now indigent. He therefore requested through new counsel at the appellant stage that numerous documents listed in his motion be provided him at the State's expense for use in briefing and arguing the appeal of his conviction.

Following oral argument of this case, we aided appellant in acquiring a number of the documents he sought. These included the *voir dire* responses of the prospective jurors; exhibits and affidavits in support of appellant's motion for a change of venue, including copies of all newspaper articles presented to the resident circuit judge relating either to the death of Dr. Pittman or to the appellant; and the order of the resident circuit judge denying appellant's motion for change of venue. Furthermore, we permitted the parties to submit supplemental briefs on the various issues with which the above-mentioned documents are concerned. Such briefs were submitted and were considered by this Court in reaching our decision. The documents not made available to appellant were all proceedings involving Trowery's case and were not, in our judgment, required for the prosecution of this appeal. This exception is deemed without merit.

A further exception of appellant argues that his trial counsel was ineffective as a matter of law in that counsel failed to request that the closing arguments be transcribed and made part of the record. We deem this exception to be without merit and dispose of it in accordance

with our holding in *State v. Williams,* S. C., 223 S. E. (2d) 38 (1976).

For the reasons set forth above the judgment is

Affirmed.

LEWIS, C. J., LITTLEJOHN and NESS, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.