684 S.E.2d 573

**The STATE, Respondent,**

v.

**Kevin Cornelius ODEMS, Appellant.**

**No. 4620.**

Court of Appeals of South Carolina.

Heard June 23, 2009.
Decided Sept. 24, 2009.
Rehearing Denied Oct. 22, 2009.

400

Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Kevin Scott Brackett, of York, for Respondent.

KONDUROS, J.

Kevin Cornelius Odems appeals his convictions and sentences for first-degree burglary, grand larceny, malicious inju-

ry to an electric utility system, and criminal conspiracy, arguing the trial court erred in denying his motions for directed verdict. We affirm.

## FACTS

On March 21, 2005, Margaret Burns was driving home from York and noticed a brown car turning into her cousin's driveway. Burns drove about a mile past the house and telephoned law enforcement while returning to a parking lot across the street from the house to watch the strange car. Burns observed two men knocking at the door of her cousin's house. Later, she saw one man run from the house to the brown car, place something in the trunk, and close the lid. When the brown car left, Burns attempted to follow it, but she could no longer see it once she reached the road.

Shortly after Burns' call, a sheriff's deputy spotted a brown Cadillac with North Carolina license plates near York. He pulled the car over, and the driver exited the car. When the deputy drew his weapon and ordered the driver back into the car, the driver behaved erratically, alternately re-entering the car, and then re-exiting the car as he talked to the other two men in the car and reached into the floorboard. The three men then jumped out of the car and ran into the woods.

A short time later, Odems knocked at the back door of Donna Beane's home and said he needed a ride. Beane did not know Odems but handed him her telephone so he could call someone to pick him up. Odems did not use the phone and instead instructed Beane that if the police arrived, she should tell them he was her boyfriend. As Beane refused and began moving away from Odems, police officers arrived. The officers took Odems into custody, as well as Derrick Dawkins and Frederick Bell, who were found hiding in the backyard.[1]

Dawkins and Bell pled guilty to burglary. Odems was tried and convicted of first-degree burglary, grand larceny, malicious injury to an electric utility system, and criminal conspir-

---

1. Odems, Dawkins, and Bell are all cousins.

acy. He received an aggregate sentence of fifteen years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

In reviewing a denial of a motion for a directed verdict, an appellate court must review the evidence in the light most favorable to the State. *State v. Venters,* 300 S.C. 260, 264, 387 S.E.2d 270, 272 (1990). If any direct evidence or any substantial circumstantial evidence reasonably tends to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury. *State v. Weston,* 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006).

## LAW/ANALYSIS

[3] Odems asserts the trial court erred in failing to direct a verdict on each of the four charged offenses. According to Odems, the State produced no evidence linking him to the burglary or proving he had any knowledge of the burglary. In support of his argument, Odems points to Dawkins' testimony providing Odems was not present for the burglary and knew nothing of it. Odems argues the evidence only proved he was riding in the vehicle with Dawkins and Bell a short time after the burglary. We disagree.[2]

When considering a motion for a directed verdict, a trial court is concerned only with the existence of evidence, not its weight. *State v. Venters,* 300 S.C. 260, 264, 387 S.E.2d 270, 272 (1990). Grant of a defense motion for directed verdict of acquittal is proper only "if there is a failure of competent evidence tending to prove the charge." Rule 19(a), SCRCrimP; *State v. Jenkins,* 278 S.C. 219, 222, 294 S.E.2d 44, 46 (1982). A trial court must submit the case to the jury if any direct or substantial circumstantial evidence has been presented that reasonably tends to prove the defendant's guilt or from which his guilt may be fairly and logically deduced. *State v. Ballington,* 346 S.C. 262, 271–72, 551 S.E.2d 280, 285

---

2. All four issues on appeal pertain to the propriety of the trial court's refusal to direct a verdict, differing only in the offense named. The facts supporting the State's case against Odems as to each issue are also the same. Consequently, we address all four issues together.

(Ct.App.2001). However, the trial court should grant a directed verdict motion when the evidence presented merely raises a suspicion of guilt. *State v. Cherry*, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004). Suspicion implies a belief or opinion as to guilt based upon facts or circumstances not amounting to proof, but the trial court is not required to find the evidence infers guilt to the exclusion of any other reasonable hypothesis. *Id.*

"Flight from prosecution is admissible as evidence of guilt." *State v. Al–Amin*, 353 S.C. 405, 413, 578 S.E.2d 32, 36 (Ct.App.2003); *see also State v. Ballenger*, 322 S.C. 196, 200, 470 S.E.2d 851, 854 (1996) (stating flight "is at least some evidence of guilt"); *State v. Freely*, 105 S.C. 243, 250, 89 S.E. 643, 645 (1916) ("The flight of one charged with crime has always been held to be some evidence tending to prove guilt."). Flight can constitute evidence of a defendant's guilty knowledge and intent. *See State v. Beckham*, 334 S.C. 302, 315, 513 S.E.2d 606, 612 (1999). "Flight, when unexplained, is admissible as indicating consciousness of guilt, for it is not to be supposed that one who is innocent and conscious of that fact would flee." *State v. Crawford*, 362 S.C. 627, 635, 608 S.E.2d 886, 890 (Ct.App.2005). "The critical factor to the admissibility of evidence of flight is whether the totality of the evidence creates an inference that the defendant had knowledge that he was being sought by the authorities." *Id.* at 636, 608 S.E.2d at 891.

"Flight or evasion of arrest is an issue for the jury to consider." *State v. Walker*, 366 S.C. 643, 655, 623 S.E.2d 122, 128 (Ct.App.2005). Flight evidence is relevant when the flight and the offense charged are connected. *State v. Pagan*, 369 S.C. 201, 209, 631 S.E.2d 262, 266 (2006); *cf. United States v. Beahm*, 664 F.2d 414, 419–20 (4th Cir.1981) (finding evidence of flight inadmissible when "a defendant flees after 'commencement of an investigation' unrelated to the crime charged, or of which the defendant was unaware").

Admittedly, the evidence against Odems was entirely circumstantial. Less than half an hour after the burglary, he

was located in the getaway car with the admitted burglars and the stolen goods. He fled from law enforcement, and he asked an uninvolved person to lie for him. No evidence directly linked Odems to the crimes, and the State relied heavily on inferences drawn from Odems' flight and constructive possession of stolen goods to convict him. However, viewing the evidence in the light most favorable to the State, a jury could find Odems was present at the scene of the burglary and participated in some way.

In support of his argument the trial court erred in denying his directed verdict motions, Odems presents the following evidence. The sole eyewitness reported and described only two men at the scene. A forensic investigator testified the twelve sets of fingerprints she collected in the car and on the stolen goods included both Dawkins' and Bell's but not Odems'. Both Dawkins and Bell testified during the State's case-in-chief, admitting they entered guilty pleas stemming from the burglary. Dawkins testified he agreed to give Odems a ride home only after committing the burglary and stopping to refuel the car. He stated Odems was not present during the burglary and knew nothing about it. In addition, Dawkins testified that just before the three men jumped out of the car and ran from police, he told Odems his driver's license was suspended. By contrast, Bell refused to answer when asked what happened on the day of the burglary, what happened to the home's front door and electric meter, and how Odems came to be in the car when the three men fled from police. Bell simply testified he was with Dawkins when the home was burglarized, but when they were later stopped by police, Odems was with them. He admitted he had never given police a statement implicating Odems. However, weighing these facts against those supporting the State's argument invites us to take an impermissible step into the jury's shoes. The propriety of directing a verdict of acquittal relies solely on the existence, and not the weight, of evidence of guilt. *See Venters,* 300 S.C. at 264, 387 S.E.2d at 272.

*Crawford* is somewhat similar to the present case. 362 S.C. at 631, 608 S.E.2d at 888. In *Crawford,* police stopped a car as it exited the parking lot of a rental store at night with its

headlights turned off. *Id.* at 632, 608 S.E.2d at 888–89. The defendant was in the car and fled the scene. *Id.* One of the other passengers told police the defendant had participated in stealing tools from the store. *Id.* at 631–32, 608 S.E.2d at 888. At trial, that passenger instead testified he was focused on a third passenger stealing the tools and had not paid attention to the defendant. *Id.* at 632, 608 S.E.2d at 889. The third passenger testified he had acted alone in stealing the tools; although the defendant and other passenger were there, they had no idea he was planning to break into the store. *Id.* This court upheld the denial of a directed verdict on the charge of criminal conspiracy. *Id.* at 645–46, 608 S.E.2d at 896.[3]

Both the law governing directed verdicts and our standard of review compel this court to consider only whether the State presented sufficient evidence from which a jury could fairly and logically deduce Odems' guilt. South Carolina jurisprudence makes clear flight is at least some evidence of guilt. Combined with Odems' presence in the car with the stolen goods and admitted burglars, Odems' flight was sufficient to constitute substantial circumstantial evidence of all four offenses. Therefore, the trial court did not err in finding the State presented sufficient evidence to send the case to the jury. Accordingly, the trial court is

**AFFIRMED.**

HEARN, C.J., and SHORT, J., concur.

---

3. While we are aware of the supreme court's recent reversal of the denial of a directed verdict in a drug trafficking case, we do not find the facts in that case comparable to those in the present case. *See State v. Hernandez*, 382 S.C. 620, 677 S.E.2d 603 (2009) (finding although defendants' forming part of three-vehicle caravan with tractor trailer containing drugs may have been suspicious and federal agents' testimonies may support inference defendants' had knowledge of drugs, this evidence alone does not constitute substantial circumstantial evidence defendants had knowledge of drugs, a required element for trafficking).