708 S.E.2d 774

**The STATE, Respondent,**

v.

**Roger BOSTICK, Petitioner.**

**No. 26961.**

Supreme Court of South Carolina.

Heard March 16, 2011.

Decided April 11, 2011.

Rehearing Denied May 26, 2011.

---

136

Chief Appellate Defender Robert M. Dudek and Appellate Defender Kathrine H. Hudgins, both of South Carolina Commission on Indigent Defense, of Columbia, for Respondent–Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia and Solicitor I. McDuffie Stone, of Bluffton, for Petitioner–Respondent.

Justice HEARN.

In this belated direct appeal, we are asked to determine whether the State produced enough evidence to survive a directed verdict motion by Roger Bostick during his murder trial for the death of Sarah Polite. Because we find the State's evidence only raised a suspicion of guilt, we reverse.

## FACTS

Polite was an older woman who served as the treasurer and secretary of her church. Her son, Rudy, lived with her in her house in Pineland, South Carolina, but her other son, Carl, lived two miles away. Typically, Polite would bring home a briefcase containing money from the church on Sunday for deposit at the bank on Monday.

The fire department was called to Polite's house on a Sunday afternoon after her house caught on fire. As the fire department attempted to extinguish the fire, Polite's body was found in the kitchen and removed by firefighters. She had been struck in the head with a blunt force object, but a subsequent autopsy revealed that she actually died as a result of carbon monoxide from the fire. Rudy testified he had left the house earlier that day to go to an auto parts store to purchase a part for his mother's car. When he returned approximately an hour later, the house was engulfed in flames

and it appeared ransacked when he looked through the window. He was present when the fire department kicked in the back door and found his mother's body in the kitchen. Arson investigators determined the fire originated in Rudy's bedroom, and gasoline was used as an accelerant.

Two days after the fire, investigators discovered the following items belonging to Polite in a burn pile at a neighboring house belonging to Bostick's mother: two sets of car keys, toenail clippers, pens, burned paper, a metal clasped ring of a purse, and a watch.[1] It was later determined that a heavy petroleum product, such as kerosene or diesel fuel, was used as an accelerant in the burn pile. Bostick's mother, Louise, testified that she did not use kerosene or diesel fuel in the burn pile because she was afraid of those accelerants. The investigators also found a blood-spattered briefcase under Polite's kitchen table.[2]

After interviewing Roger Bostick, the investigators asked for his clothing and shoes, which Bostick willingly delivered to them. Blood was found on his jeans, and a DNA analysis was performed and cross-referenced with a standard from Polite.[3] The DNA analysis came back inconclusive, and the agent who reviewed the DNA analysis findings, Nancy Skraba, testified that while ninety-nine percent of the population could be excluded as contributing to the sample, she was unable to determine whether the blood sample actually came from Polite. The chemical analysis of the shoes revealed a relatively fresh pattern that matched gasoline. At the close of the State's case-in-chief, Bostick moved for a directed verdict, which was denied.

Bostick testified in his own defense, telling the jury he drank at a cookout before the fire and returned to his mother's house to take a nap before the fire engine sirens woke him up. Bostick's second witness, his sister Gladys, recounted the events of the night of the fire, and testified specifically about Rudy Polite's demeanor. She stated she observed Rudy enter-

---

1. The burn pile was in the Bostick family's immediate back yard, which was approximately a quarter of a mile from Polite's home.

2. No evidence was introduced concerning the contents of the briefcase.

3. No blood standard was taken from Bostick.

ing Polite's house on the day of the fire at around six o'clock as she was leaving her mother's house. When Polite's body was carried out of the house and placed on the ground, Gladys told the jury that after Rudy looked at his mother, he started to smoke a cigarette and "didn't express any emotion or feeling." Gladys also said she could not tell whether the house was ransacked because there was too much smoke.

Bostick's final witness was his oldest sister, Sarah Howell. Sarah recounted an argument she overheard between Rudy and Polite on the day of the fire, wherein Polite was allegedly upset that Rudy fixed everyone's car except hers, threw her keys at him, and then went inside the house. According to Sarah, Rudy drove off in a truck a few moments later. After Bostick closed his case, he moved for a directed verdict, which was also denied.

The jury found Bostick guilty of Polite's murder, and the circuit court sentenced him to thirty years imprisonment. Bostick did not file a direct appeal. Bostick filed a *pro se* petition for post-conviction relief (PCR), claiming his counsel was ineffective for failing to advise him about his appeal rights. The PCR judge denied his request, and this Court denied certiorari. Bostick filed a federal habeas corpus petition against the warden of Broad River Correctional Institution in the federal district court. Judge Joseph F. Anderson granted summary judgment in favor of the warden, and Bostick appealed to the Fourth Circuit Court of Appeals. The Fourth Circuit reversed Judge Anderson's order, finding Bostick was denied effective assistance of counsel because his counsel did not file a direct appeal following Bostick's conviction. Judge Anderson subsequently filed an order directing that Bostick be released from prison unless the State of South Carolina granted him a direct appeal within a reasonable time. This Court issued a writ of certiorari so that it could review Bostick's direct appeal issues.

### *LAW/ANALYSIS*

Bostick argues that the evidence submitted did not rise to the level of substantial circumstantial evidence necessary to

submit the case to the jury.[4]  The State submits that more than sufficient evidence was presented to submit the murder charge to the jury, and Bostick's arguments go more to the weight the jury should have accorded the State's evidence. We disagree.

■■■■  A case should be submitted to the jury when the evidence is circumstantial "if there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced." *State v. Mitchell*, 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000); *see also State v. Williams*, 321 S.C. 327, 332, 468 S.E.2d 626, 629 (1996).  "The jury weighs the evidence but when there is an absence of evidence, it becomes the duty of the trial judge to direct a verdict. . . ." *State v. Schrock*, 283 S.C. 129, 134, 322 S.E.2d 450, 452–53 (1984).  Evidence must constitute positive proof of facts and circumstances which reasonably tends to prove guilt.  *Id.* at 133, 322 S.E.2d at 452 (citing *State v. Manis*, 214 S.C. 99, 51 S.E.2d 370 (1949)).  "Unless there is a total failure of competent evidence as to the charges alleged, refusal by the trial judge to direct a verdict of acquittal is not error." *State v. Irvin*, 270 S.C. 539, 543, 243 S.E.2d 195, 197 (1978) (citing *State v. Massey*, 267 S.C. 432, 229 S.E.2d 332 (1976)).  On appeal of the denial of a directed verdict of acquittal, this Court must look at the evidence in the light most favorable to the State.  *State v. Martin*, 340 S.C. 597, 602, 533 S.E.2d 572, 574 (2000).

We begin our analysis with three seminal cases from our jurisprudence analyzing the proof necessary in cases with circumstantial evidence.  In *Schrock*, the sheriff's department responded to the report of a fire at the home of Mr. and Mrs. Strickland.  *Schrock*, 283 S.C. at 130, 322 S.E.2d at 451.  Mr. Strickland's body was found amid the remains of the burned home, and Mrs. Strickland's body was floating in a small pond 200 feet from the residence.  *Id.* at 131, 322 S.E.2d at 451.  Cigarette butts, an empty oil can, and a rolled-up newspaper

---

4.  Because of our disposition of this issue, we decline to address Bostick's remaining evidentiary issue relating to improper character evidence.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that if an appellate court's ruling on a particular issue is dispositive of an appeal, rulings on remaining issues are unnecessary).

were found on the premises. *Id.* Between the house and the garage, a footprint was found and photographed, and a plaster cast was made. *Id.* Schrock was eventually indicted and tried for the murders. *Id.* at 130, 322 S.E.2d at 451.

As here, the evidence against Schrock produced at trial was exclusively circumstantial. Nothing placed Schrock at the scene of the crime, and experts could not definitively testify that the footprint was made by shoes belonging to Schrock. *Id.* at 132, 322 S.E.2d at 452. Additionally, while witnesses could testify that Schrock was wearing tennis shoes the afternoon before the fire and the next morning, they could not place him less than three or four miles away from the Strickland home, and the shoes presented as evidence were not identified by any witness who had seen Schrock wearing tennis shoes. *Id.* Although Schrock admitted to smoking the same Marlboro brand cigarettes located at the scene, tests run by the FBI did not indicate that Schrock had smoked the butts found. *Id.* at 131–32, 322 S.E.2d at 451. This Court found that the State had not been able to muster substantial circumstantial evidence warranting submission of the case to the jury; therefore, a directed verdict in favor of Schrock should have been granted by the circuit court. *Id.* at 134, 322 S.E.2d at 453.

In *State v. Arnold*, 361 S.C. 386, 605 S.E.2d 529 (2004), the victim, Jennings Cox, was shot, and his body was found off a dirt road in Colleton County. 361 S.C. at 388, 605 S.E.2d at 530. On the last day Cox was seen alive, he borrowed a friend's BMW Z3 to go to a dentist's appointment. *Id.* at 388, 605 S.E.2d at 530. Evidence showed he withdrew money from an ATM on that day, but he was not seen again until his body was discovered. *Id.* The car driven by Cox was found in a parking lot in Johnson City, Tennessee, and one of the State's witness testified that Arnold called him from his father's home phone ten miles from where the car was found. *Id.* at 389, 605 S.E.2d at 530. While no blood was found in the car, the car had some unspecified scratches on it, and a coffee cup lid containing Arnold's fingerprint was found in the center console. *Id.* The court of appeals found there was no substantial evidence to submit the case to the jury and held a directed verdict of acquittal should have been granted. *Id.* at 390, 605 S.E.2d at 531.

This Court held that Arnold's fingerprint on the lid established only that he was in the borrowed BMW on the same day Cox was last seen alive. *Id.* Additionally, there was no evidence that Arnold was at the scene of the crime, which presumably was in Colleton County. *Id.* Even though both Arnold and the BMW were found in Tennessee, we held the evidence only raised a suspicion of guilt and was not sufficient to show that Arnold killed Cox. *Id.* Therefore, we affirmed the decision of the court of appeals.

Finally, in *Mitchell,* Hugh Mathis's home was burglarized and two guns were stolen. *Mitchell,* 341 S.C. at 408, 535 S.E.2d at 127. Mitchell had been a guest at Mathis's home on several occasions. *Id.* The day after the burglary was reported, investigators found a fingerprint on a screen leaning up against the house which matched Mitchell. *Id.* Mitchell was arrested and convicted of burglary; during his trial, Mitchell moved for a directed verdict, which was denied by the circuit court. *Id.*

The fingerprint was the only evidence linking Mitchell to the burglary. *Id.* at 409, 535 S.E.2d 126. After first commenting that the evidence presented was entirely circumstantial, this Court determined "the fact that [Mitchell's] fingerprint was on a screen that was propped up against the house does not prove entry where [Mitchell] had been in and around [Mathis's] house at least three times prior to the burglary." *Id.* The State did not produce any evidence concerning whether the screen was on the window when the window was broken or when the screen had been removed. *Id.* We accordingly affirmed the court of appeals' ruling that Mitchell was entitled to a directed verdict. *Id.*

■ Analyzing the evidence presented by the State in the light most favorable to it, we believe the State's evidence here raised only a suspicion of guilt by Bostick. No direct evidence linked Bostick to the crime scene or the items found in the burn pile. Moreover, there was no testimony tending to establish that Bostick had control over the burn pile. When the State closed its case against Bostick, the following pieces of circumstantial evidence of his guilt had been presented: (1) Polite's car keys, calculator, and other items from her home were found in the Bostick family's burn pile; (2) the fire in the

burn pile was accelerated with either kerosene or diesel fuel, and Bostick's mother did not use those accelerants when she burned things in the pile; (3) Bostick had a pattern that matched gasoline on his shoes and gasoline was the accelerant used for the house fire; and (4) while the DNA from the blood found on Bostick's jeans excluded about ninety-nine percent of the population, the blood could not be matched to Polite's DNA. In addition, the weapon used to beat Polite in the head was never introduced into evidence. Finally, no evidence was introduced concerning Bostick's knowledge that Polite may have had money in the briefcase or if indeed any money was in the briefcase on that particular Sunday. The evidence presented by the State raised, at most, a mere suspicion that Bostick committed this crime. Under settled principles, the trial court should grant a directed verdict motion when the evidence presented merely raises a suspicion of guilt. *State v. Cherry*, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004). Therefore, we find the circuit court erred in failing to direct a verdict in favor of Bostick.

## CONCLUSION

Therefore, we reverse the circuit court and remand it back with instructions to issue a judgment consistent with our ruling.

**REVERSED.**

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.