720 S.E.2d 48

**The STATE, Respondent,**

v.

**Kevin Cornelious ODEMS, Petitioner.**

No. 27084.

Supreme Court of South Carolina.

Heard Nov. 30, 2011.

Decided Dec. 28, 2011.

Rehearing Denied Jan. 25, 2012.

Chief Appellate Defender Robert M. Dudek, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Mark R. Farthing, all of Columbia; and Kevin Scott Brackett, of York, for Respondent.

Chief Justice TOAL.

Kevin Cornelius Odems (Petitioner) appeals the court of appeals' decision affirming his 2005 convictions for first degree burglary, grand larceny, criminal conspiracy, and malicious injury. The State's case against Petitioner consisted solely of circumstantial evidence. Petitioner argues that the State failed to present *substantial* circumstantial evidence of his involvement in any of the crimes charged, and thus the circuit court should have directed a verdict on all four counts. We agree and reverse.

## FACTUAL/PROCEDURAL BACKGROUND

On March 21, 2005, Margaret Burns noticed a brown car she did not recognize turning into her cousin's driveway. Burns telephoned law enforcement while she continued to watch the car from her own vehicle parked across the street from the house. Burns observed two men knocking on the door of her cousin's house, and later observed one of the men place something in the car's trunk. Burns unsuccessfully attempted to follow the car once it departed.

Approximately ninety minutes after Burns notified police, a nearby sheriff's deputy spotted a brown Cadillac. The sheriff's deputy pulled the car over, and ordered the driver out of the car. The driver, Derrick Dawkins, exited the car, as he spoke to two men located inside the car, Petitioner and Frederick Bell. Dawkins testified at trial that he told Petitioner that his license had been suspended, and that shortly thereafter "everybody ran."

A short time later Petitioner knocked at the door of Donna Beane. Petitioner informed Beane that he needed a ride. Beane did not know Petitioner, but allowed him to use her telephone to call for a ride. Petitioner did not call for a ride, but told Beane that if police arrived she should inform them that he was her boyfriend. Beane claimed that Petitioner told her "he was with somebody that didn't have a driver's license or that had a suspended driver's license and that the person had gotten pulled over and that he didn't want to get in any trouble." Beane refused Petitioner's request just as police officers arrived. Police took Petitioner into custody as well as Dawkins and Bell who were found hiding in Beane's backyard.

A police search of the Cadillac recovered several items identified as stolen from the victim's home, including a camcorder, a money jar containing between $300 and $400, a camera, three watches, and a gun. The estimated total value of the stolen items was over $1,000.

The York County grand jury indicted Petitioner for first degree burglary, grand larceny, criminal conspiracy, and malicious injury to an electric utility system. At trial, Petitioner moved for a directed verdict at the close of the State's evidence. The circuit court denied the motion. The jury convicted Petitioner of the four charges, and the circuit court sentenced Petitioner to fifteen years imprisonment. The court of appeals affirmed Petitioner's convictions, holding the circuit court did not err in refusing to grant a directed verdict on the charges.

## ISSUE PRESENTED

Did the court of appeals err in holding the circuit court properly refused to direct a verdict for Petitioner on the

charges of first degree burglary, grand larceny, criminal conspiracy, and malicious injury to an electronic utility meter? [1]

## STANDARD OF REVIEW

On appeal from the denial of a directed verdict, this Court must view the evidence in the light most favorable to the State. *State v. Lollis*, 343 S.C. 580, 583, 541 S.E.2d 254, 256 (2001) (citing *State v. Burdette*, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999)). The defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. McHoney*, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001). However, if there is any direct or *substantial* circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury. *State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000) (emphasis added). A circuit judge should grant a directed verdict motion when the evidence merely raises a suspicion the accused is guilty. *State v. Schrock*, 283 S.C. 129, 132, 322 S.E.2d 450, 451–52 (1984).

## LAW/ANALYSIS

Petitioner argues that the court of appeals erred in affirming the circuit court's refusal to direct a verdict on the four charges for which he was convicted. We agree. This Court has repeatedly affirmed the principle that when the State fails to produce substantial circumstantial evidence that the defendant committed a particular crime, the defendant is entitled to a directed verdict. *State v. Rothschild*, 351 S.C. 238, 243, 569 S.E.2d 346, 348 (2002).

Two cases from this Court's jurisprudence are instructive in explaining the proof required in cases built wholly on circumstantial evidence. In *State v. Bostick*, 392 S.C. 134, 708 S.E.2d 774 (2011), the State accused Bostick of killing his neighbor, Polite, and burning down her home. The State presented the following evidence against Bostick: (1) investigators found

---

1. Petitioner presents each of the four charges as separate issues in his appeal to this Court. However, the facts supporting the State's case against Petitioner, and the propriety of the circuit court's refusal to direct a verdict, are the same for each issue. Thus, we address all four of Petitioner's issues together.

personal items belonging to Polite, including a watch and two sets of car keys, in a burn pile located on the Bostick family property; (2) Bostick's shoes contained a pattern that matched gasoline, and gasoline was the accelerant used to start the house fire; (3) and investigators found blood on the clothes Bostick was wearing the day of the murder, but that evidence could not be matched to Polite's DNA. *Id.* at 141–42, 708 S.E.2d at 778. However, the State never introduced a motive or a murder weapon into evidence. *Id.* Thus, "the evidence presented by the State raised, at most, a mere suspicion that Bostick committed this crime." *Id.* at 142, 708 S.E.2d at 778.

In *State v. Lollis* this Court reviewed a court of appeals' decision affirming a circuit court's refusal to direct a verdict on a charge of second degree arson. 343 S.C. 580, 581, 541 S.E.2d 254, 255 (2001). Lollis lived in a mobile home with his common law wife, Tammy Burgess. *Id.* at 582, 541 S.E.2d at 255. Burgess confessed to setting fire to the home and claimed that Lollis had no knowledge of her plans. *Id.* According to Burgess, she burned the home in order to erase the couple's mortgage debt. *Id.* However, the State charged both Lollis and Burgess in the arson of the mobile home. *Id.*

The State relied on four pieces of circumstantial evidence to convict Lollis: (1) the marital relationship between Burgess and Lollis; (2) Lollis's alleged financial trouble; (3) the fact that Lollis placed his personal valuables from the home in a storage room one day prior to the fire; and (4) Lollis's possession of the storage room key on the day of the fire. *Id.* at 584, 541 S.E.2d at 256. However, alternate evidence showed that Lollis was current on his mortgage at the time of the fire. *Lollis,* 343 S.C. at 585, 541 S.E.2d at 257. Moreover, Lollis testified he had no reason to burn down his home because of extensive remodeling being done at the time of the fire, and that he moved his belongings into storage in order to protect them from damage due to that remodeling work. *Id.* at 582–83, 541 S.E.2d at 255.

This Court held that the State's evidence did not "reasonably tend" to prove Lollis's guilt:

First, Burgess admitted to starting the fire without assistance from Lollis, without his knowledge, and the State

presented no evidence of an agreement between them. Second, the State presented no evidence of Lollis' financial trouble.... Furthermore, Lollis did not have insurance on his personal property lost in the fire. Finally, Lollis presented a plausible explanation for placing valuables in the storage room on the day of the fire-he was trying to protect them from drywall dust as he remodeled his home.

*Id.* at 585, 541 S.E.2d at 257 (holding that a mere arousal of suspicion is an improper basis to deny a motion for directed verdict).

The circumstantial evidence presented in Petitioner's case is analogous to that found in *Bostick* and *Lollis.* The State's case against Petitioner relied primarily on three pieces of circumstantial evidence: (1) the fact that less than ninety minutes after the burglary, police located Petitioner in the getaway car with the burglars and the stolen goods; (2) Petitioner fled from law enforcement; and (3) Petitioner asked an uninvolved person to lie for him. *State v. Odems,* 385 S.C. 399, 404–05, 684 S.E.2d 573, 575 (Ct.App.2009).

Even when viewed in the light most favorable to the State, the circumstantial evidence presented does not reasonably tend to prove Petitioner's guilt. The sole eyewitness in Petitioner's case described only two men at the scene. A forensic investigator testified that she collected twelve sets of fingerprints in the car and from the stolen goods. These sets included prints from both Dawkins and Bell, but not Petitioner. Dawkins testified during the State's case-in-chief and explained how Petitioner ended up in the car with the stolen goods even though he did not participate in the burglary [2]:

We stopped at a little gas station up the road up there and that's where I ran into [Petitioner] at, at the gas station.... He asked me can he get a ride. I said yeah, you can get a ride, man. I didn't let him know what was going on, what just happened you know, so we jumped in the car, we left.[3]

---

**2.** Bell refused to answer when asked what happened on the day of the burglary with regard to Petitioner. However, Bell testified that he was with Dawkins when the home was burglarized, but that when they were later stopped by police, Petitioner was with them. Bell admitted that he never provided police a statement implicating Petitioner.

**3.** The State notes that Petitioner, Dawkins, and Bell are cousins. The prosecutor stated at trial that "they're all cousins," and, "[T]his defen-

The court of appeals emphasized Petitioner's flight from law enforcement in finding *State v. Crawford* controlling. 362 S.C. 627, 608 S.E.2d 886 (Ct.App.2005).

In *Crawford*, the defendant was present at the scene of a rental store burglary. *Id.* at 634–35, 608 S.E.2d at 890. Police then located Crawford in the getaway car, but he fled before an arrest could take place. *Id.* The driver told the arresting officer that Crawford and the third passenger stole tools from the rental store. *Id.* at 631–32, 608 S.E.2d at 888. However, at trial, the driver testified that he could not say definitively whether Crawford participated in the robbery. *Id.* at 632, 608 S.E.2d at 889. The other passenger in the car testified that he acted alone during the robbery, and that he did not inform the driver or Crawford that he planned on breaking into the store. *Id.* The court of appeals upheld the circuit court's denial of a directed verdict on a charge of criminal conspiracy. *Crawford*, 362 S.C. at 645–46, 608 S.E.2d at 896.

The flight in *Crawford* is distinguishable from that of Petitioner. In *Crawford*, the statements from the driver and passenger provided substantive direct evidence of at least Crawford's presence at the crime scene, and in the case of the driver's first statement, a direct implication in the crime itself. Thus, the totality of the circumstances could have created an inference that Crawford had knowledge he was being sought by authorities. *Id.* at 635, 608 S.E.2d at 890.

---

dant, whose testimony is is [sic] cousins with with [sic] Derrick Dawkins. He's cousins and friends with Frederick Bell. He's from-they're all from Kings Mountain." However, the State failed to present evidence of any agreement or collusion between Petitioner, Dawkins, and Bell. The existence of a familial relationship between the three individuals does not affect the validity of Dawkins's testimony or the analysis of the State's circumstantial evidence. In *Lollis*, this Court accepted the testimony of Lollis's common law wife in finding that the State's evidence did not "reasonably tend" to prove Lollis's guilt. *Lollis*, 343 S.C. at 582, 541 S.E.2d at 255. In *Bostick*, the defendant's sisters testified that Bostick argued with the victim and entered her house on the day the victim was killed and her home burned. *Bostick*, 392 S.C. at 138, 708 S.E.2d at 776. However, this testimony did not elevate the State's circumstantial evidence above "mere suspicion." *Id.* at 142, 708 S.E.2d at 778. Thus, it is clear that the simple and solitary fact that certain testimony comes from a relative of the accused has not been shown to affect this Court's analysis of whether circumstantial evidence is substantial.

In relying on *Crawford*, the court of appeals noted that flight evidence is relevant when the flight and the offense charged are connected. *State v. Odems*, 385 S.C. 399, 404, 684 S.E.2d 573, 575 (Ct.App.2009) (citing *State v. Pagan*, 369 S.C. 201, 209, 631 S.E.2d 262, 266 (2006)). However, in Petitioner's case, the State failed to present evidence connecting Petitioner's flight with anything other than Dawkins's statement regarding his suspended driver's license.

In *Crawford* there was no doubt regarding the defendant's presence at the scene of the crime, regardless of whether it could actually be proven that he participated in the crime. In Petitioner's case, there is no evidence before this Court placing Petitioner at the crime scene, or discounting the testimony of Dawkins and Beane regarding Petitioner's reason for attempting to flee arrest. We decline to hold that flight alone is substantial circumstantial evidence of a defendant's guilt.

██ Petitioner's overall actions may appear suspicious, but mere suspicion is insufficient to support a guilty verdict. *See State v. Arnold*, 361 S.C. 386, 389–90, 605 S.E.2d 529, 531 (2004) (holding that the trial court must grant a directed verdict when the evidence merely raises a suspicion that the accused is guilty). The traditional circumstantial evidence definition illustrates the deficiency in the State's evidence against Petitioner. This definition provided that if the State relies on circumstantial evidence to prove its case, the jury may not convict the defendant unless:

> Every circumstance relied upon by the State be proven beyond a reasonable doubt; and . . . all of the circumstances proven be consistent with each other and taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis.

*State v. Hernandez*, 382 S.C. 620, 626 n. 2, 677 S.E.2d 603, 606 n. 2 (2009) (citing *State v. Edwards*, 298 S.C. 272, 274–76, 379 S.E.2d 888, 889 (1989), *abrogated by State v. Cherry*, 361 S.C. 588, 595–606, 606 S.E.2d 475, 478–82 (2004)).

Despite the Court's abandonment of the use of this particular definition as a jury charge in *State v. Cherry*, the definition illustrates the lack of evidence against Petitioner.[4] The

---

4. In *State v. Grippon*, this Court held if the jury is properly instructed on reasonable doubt, it is unnecessary for the trial court to instruct the

State's key circumstantial evidence: (1) Petitioner's location in the getaway car a relatively short time after the robbery; (2) Petitioner's flight from law enforcement; and (3) Petitioner's attempt to enlist the assistance of an uninvolved individual, do not point to his guilt for the crimes charged to the exclusion of every other reasonable hypothesis-namely, the notion that he did in fact join Dawkins at a gas station following the crime.

Simply put, the State offered no direct evidence that Petitioner committed robbery in the first degree, grand larceny, criminal conspiracy, or malicious injury. However, substantial circumstantial proof of Petitioner's involvement in one of the four offenses would prove Petitioner's involvement as to all offenses. The circumstantial evidence presented by the State proves only that: (1) when stopped by the sheriff's deputy, Petitioner was in the vehicle used by Dawkins and Bell to leave the scene of the robbery; and that (2) following the stop, Petitioner fled along with Dawkins and Bell.

---

jury that "circumstantial evidence must be so strong as to exclude every other reasonable hypothesis other than guilt." 327 S.C. 79, 83, 489 S.E.2d 462, 464 (1997). This Court then recommended the following charge in cases relying on circumstantial evidence:

Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact.... Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence.... Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence.... After weighing all the evidence if you are not convinced of the guilt of the defendant by a reasonable doubt, you must find [the defendant] not guilty.

*Id.* at 83–84, 489 S.E.2d at 464.

In *Cherry*, this Court rejected the traditional circumstantial evidence charge in favor of the *Grippon* charge. *Cherry*, 361 S.C. at 601, 606 S.E.2d at 482 (holding that the traditional circumstantial evidence definition served to confuse juries by leading them to believe that the standard for measuring circumstantial evidence is different than that for measuring direct evidence).

However, the evaluation of circumstantial evidence requires the connection of collateral facts in order to reach a conclusion, and this process is not required when evaluating direct evidence. *Id.* at 603, 606 S.E.2d at 483. Thus, the traditional circumstantial evidence definition provides more detailed information about the relation of circumstantial evidence to the determination of guilt. *Id.* The definition does not, however, change the standard for evaluating evidence: every circumstance must be proved beyond a reasonable doubt. *Id.*

The State asks this Court to uphold Petitioner's convictions based on evidence which does not satisfy the standard adopted by this Court regarding the proof necessary in a circumstantial evidence case. *See Bostick,* 392 S.C. at 139–41, 708 S.E.2d at 777–78 (identifying three of this Court's seminal cases analyzing the substantial circumstantial evidence standard).

## CONCLUSION

The circumstantial evidence presented by the State does not reasonably tend to prove Petitioner's guilt, and fails this Court's well-settled directive that circumstantial evidence that is not substantial is insufficient to go to a jury. Thus, we reverse the court of appeals' decision affirming Petitioner's 2005 convictions.

**REVERSED.**

BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., concurring in result only.