**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Christopher Miller, Appellant.

Appellate Case No. 2011-197146

_____

Appeal From Georgetown County
Steven H. John, Circuit Court Judge

_____

Unpublished Opinion No. 2015-UP-310
Heard September 8, 2014 – Filed June 24, 2015

_____

**AFFIRMED**

_____

Appellate Defender Laura Ruth Baer, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mary Williams Leddon, both of Columbia, for Respondent.

_____

**PER CURIAM:** Christopher Miller appeals his conviction for criminal conspiracy. We affirm.

1.  We find unpreserved Miller's argument his conviction for criminal conspiracy must be set aside because the acquittal of the victim's wife, the other named co-conspirator, negates the possibility of an agreement, which is an essential element of the crime of criminal conspiracy.  This issue was never raised to or ruled on by the trial court.  *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) ("In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge.").

2.  We find the trial court did not err in denying Miller's motion for a directed verdict on the charge of criminal conspiracy.  *See State v. Odems*, 395 S.C. 582, 586, 720 S.E.2d 48, 50 (2011) (stating in reviewing the denial of a directed verdict motion, the appellate court must view the evidence in the light most favorable to the State); *id.* ("[I]f there is any direct or *substantial* circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury."); S.C. Code Ann. § 16-17-410 (2003) (defining criminal conspiracy as "a combination between two or more persons for the purpose of accomplishing an unlawful object or a lawful object by unlawful means"); *State v. Cope*, 405 S.C. 317, 348, 748 S.E.2d 194, 210 (2013) ("The gravamen of conspiracy is an agreement or combination."); *State v. Crawford*, 362 S.C. 627, 637, 608 S.E.2d 886, 891 (Ct. App. 2005) ("A formal or express agreement need not be established."); *id.* ("A tacit, mutual understanding, resulting in the willful and intentional adoption of a common design by two or more persons is sufficient, provided the common purpose is to do an unlawful act either as a means or an end." (internal quotation marks omitted)); *Cope*, 405 S.C. at 348, 748 S.E.2d at 210 ("To establish the existence of a conspiracy, proof of an express agreement is not necessary, and direct evidence is not essential, but the conspiracy may be sufficiently shown by circumstantial evidence and the conduct of the parties." (internal quotation marks omitted)).  Miller's indictment for criminal conspiracy alleged a conspiracy with the victim's wife "and/or with other persons," thus including a conspiracy with an unnamed co-conspirator.  *See Crawford*, 362 S.C. at 638, 608 S.E.2d at 892 (stating while it takes at least two members to form a conspiracy, they all need not be indicted or named).  Fellow inmate Bruce Richardson testified Miller told him "he needed to research murder cases because he only shot and killed the dog, he couldn't be guilty of murder."  Miller also told Richardson he went to the victim's house with Nick Lambert and he was supposed to go in and shoot the victim, but when he saw the victim lying in bed asleep, he could not shoot him.  Richardson testified: "[Miller] said he backed down and shots were fired, and as a result of that the dog charged him from the bed, and he shot and killed the dog."  Miller's statement to Richardson was consistent with the

victim's wife's statements one intruder shot the victim and the other intruder shot the dog. Tracy Thrower, a firearm and tool mark examiner, verified the bullet that killed the dog was fired from a different handgun than the one that fired the bullets into the victim's body. One of the victim's friends testified he saw the victim's wife at the door letting in Miller and a person he thought was Nick Lambert around 9:30 to 9:45 p.m. on the night of the shooting. Thus, the record contains evidence Miller was with Lambert on the night of the murder, they went into the victim's house that night where Miller was "supposed to kill" the victim, and when he did not kill the victim, someone else finished the job for him. Accordingly, the conspiracy charge was properly submitted to the jury.

**AFFIRMED.**

**HUFF, SHORT, and KONDUROS, JJ., concur.**